**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: JEFFREY L.
SILVERMAN; FAYE J. SILVERMAN,
*Debtors,*

STATE COMPENSATION INSURANCE
FUND,
*Appellant,*

v.

NANCY HOFFMEIER ZAMORA,
Chapter 7 Trustee,
*Appellee.*

No. 08-56508

D.C. No.
2:08-cv-01311-VBF

OPINION

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued and Submitted
February 1, 2010—Pasadena, California

Filed August 12, 2010

Before: Mary M. Schroeder, Raymond C. Fisher and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

11517

---

**COUNSEL**

Reem J. Bello (argued) & Jeffrey I. Golden of Weiland, Golden, Smiley, Wang, Ekvall & Strok, LLP, Costa Mesa, California, for plaintiff-appellee Nancy Hoffmeier Zamora, Chapter 7 Trustee.

Virginia O'Ryan Hoyt (argued), San Francisco, California, for defendant-appellant State Compensation Insurance Fund.

---

**OPINION**

N.R. SMITH, Circuit Judge:

In this appeal, we are asked to resolve two novel questions: (1) whether district court decisions bind bankruptcy courts in other districts and (2) whether criminal restitution payments are recoverable by a trustee in bankruptcy as preferences under 11 U.S.C. § 547(b). We conclude that (1) district courts do not bind bankruptcy courts in other districts and (2) criminal restitution payments, so long as they otherwise meet the statutory requirements of § 547(b), are recoverable by a trustee as preferences.

## I.  Background

Jeffrey and Faye Silverman owned and operated an electrical contracting company, for which State Compensation Insurance Fund ("State Fund") provided workers' compensation insurance for the 2002, 2003, and 2004 policy periods.

Sometime in October 2004, the Silvermans began participating in a scheme, wherein they underreported payroll, underpaid premiums, and prevented injured workers from obtaining benefits under the workers' compensation law. The government discovered the fraud and indicted the Silvermans for insurance fraud under California Insurance Code section 11880(a). The Silvermans pleaded nolo contendere and were convicted pursuant to a plea agreement in March 2005, shortly after paying $101,531 in restitution to State Fund, with the payment included as part of the court-ordered sentence.

## A.    Bankruptcy Court Proceedings

On April 29, 2005, the Silvermans filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California, and a bankruptcy trustee, Nancy Zamora ("the Trustee"), was appointed. 11 U.S.C. § 547(b) outlines that a trustee may recover the transfer of "an interest of the debtor in property" that is "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent;" and that was "(4) made . . . on or within 90 days before the date of the filing of the [bankruptcy] petition." Believing that the restitution payment fit this statutory definition, the Trustee filed adversary proceedings against State Fund on April 5, 2007 to recover the criminal restitution payment.

State Fund and the Trustee filed cross-motions for summary judgment in the bankruptcy court. The Trustee argued that the payment met the facial requirements of § 547(b). State Fund argued that § 547(b) does not apply to criminal restitution payments in any event. State Fund relied mainly on *Kelly v. Robinson*, 479 U.S. 36 (1986), in which the Supreme Court found that criminal restitution payments were nondischargeable in bankruptcy, and *Becker v. County of Santa Clara (In re Nelson)*, 91 B.R. 904 (N.D. Cal. 1988), in which

the Northern District of California ruled that, because criminal restitution payments are non-dischargeable under *Kelly*, they are not preferences under § 547(b).

The bankruptcy court found *Kelly* distinguishable and declined to follow *Nelson*, finding it unpersuasive. The bankruptcy judge stated:

> I do not find [*Nelson*] persuasive. The *Kelly* opinion dealt with dischargeability, not avoidability. Indeed, even the *Nelson* court conceded that the "historical exception to avoidance of restitution does not appear to be as clearly established as the exception for discharge of restitution . . . ."

Having found that all the elements of § 547 had been met, the bankruptcy court concluded that the Trustee could recover the restitution payment. The bankruptcy court proceeded to give two additional reasons for its ruling. First, the court noted that "if Congress intended to exclude restitution awards from a preference action, it knows exactly how to do it . . . ." Second, the court found no good public policy reason to treat criminal restitution payments differently from any other payments received during the preference period.

## B.	District Court Proceedings

State Fund appealed the bankruptcy court's order to the district court, and the district court affirmed on August 12, 2008. The district court stated:

> [T]he plain language of 11 U.S.C. § 547 and the weight of legal authority support the Bankruptcy Court's finding that the restitution payment to Appellant was an avoidable preferential payment. . . . This Court finds that [*Nelson*] is non-binding precedent, and [*Kelly*] is factually distinguishable.

State Fund now appeals.

## II. Standard of Review

"Because this court is in as good a position as the district court to review the findings of the bankruptcy court, it independently reviews the bankruptcy court's decision." *In re Allen*, 300 F.3d 1055, 1058 (9th Cir. 2002) (quoting *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986)). "We review the bankruptcy court's conclusions of law de novo and review its findings of fact for clear error." *Id.* Because neither party disputes any of the bankruptcy court's factual findings, we address only the bankruptcy court's conclusions of law.

## III. Discussion

On appeal, State Fund argues both that: (1) the Northern District of California's ruling in *Nelson* was binding on the bankruptcy court and, therefore, the bankruptcy court erred by not following it; and (2) 11 U.S.C. § 547(b)'s prohibition on preferences does not apply to criminal restitution payments. We reject both arguments and affirm the district court.

### A. District Court Decisions do not Bind Bankruptcy Courts in other Districts

State Fund argues that, because "[b]ankruptcy courts should be bound by published district court bankruptcy appellate decisions," the bankruptcy court erred when it failed to follow the authority of the *Nelson* holding (which would have vindicated State Fund's position). In support of its argument, State Fund first assumes that Bankruptcy Appellate Panel ("BAP") decisions bind all bankruptcy courts in the Circuit. It then reasons that, because BAP decisions cannot bind district courts, the BAP is "inferior" to district courts. Therefore, State Fund argues, "one would expect that published decisions of a district court, acting in its appellate capacity, should

equally bind all bankruptcy courts in the Ninth Circuit." We disagree.

At present, there is no controlling case law directly on this point. However, we now make clear that a bankruptcy court is not bound by a district court's decision from another district. There are logical reasons for our decision.

[1] First, State Fund has structured its argument on a false premise; we have never held that all bankruptcy courts in the circuit are bound by the BAP. *See, e.g., Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990).[1]

[2] Second, bankruptcy court decisions cannot be appealed to district courts in other districts. Therefore, it makes little sense for such district court decisions to have precedential authority over out-of-district bankruptcy courts. We have also held that "[t]he doctrine of stare decisis does not compel one district court judge to follow the decision of another." *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977). Were we to hold that bankruptcy courts are bound by all district court decisions within the circuit, rather than only the decision of the district judge to whom their ruling has been appealed, bankruptcy courts would be subject to a potentially non-uniform body of law.[2] We therefore hold that the bankruptcy court in this case (located in the Central District of California) was not bound by the *Nelson*

---

[1]Nevertheless, we treat the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit. *See In re Rosson*, 545 F.3d 764, 772 n.10 (9th Cir. 2008); *Bank of Maui*, 904 F.2d at 472 (O'Scannlain, J., specially concurring).

[2]This case does not present the question whether bankruptcy courts are bound by all the decisions of all the district judges within the district where the bankruptcy court sits. We recognize that, because district judges within a district do not bind each other, such a requirement could create the same problem of subjecting bankruptcy courts to a non-uniform body of law.

holding (a decision by a district judge in the Northern District of California).

### B.   Criminal Restitution Payments are Subject to 11 U.S.C. § 547(b)

" 'The starting point for our interpretation of a statute is always its plain language.' " *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009) (citation omitted). "The plain meaning governs unless a clearly expressed legislative intent is to the contrary, or unless such plain meaning would lead to absurd results." *Dyer v. United States*, 832 F.2d 1062, 1066 (9th Cir. 1987) (citation omitted). "To determine plain language we consider 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' " *Rowe*, 559 F.3d at 1032 (citation omitted). Therefore, we begin our analysis of § 547(b) by examining its text and background.

11 U.S.C. § 547(b) states:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>
> > **(1)** to or for the benefit of a creditor;
> >
> > **(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;
> >
> > **(3)** made while the debtor was insolvent;
> >
> > **(4)** made—
> >
> > > **(A)** on or within 90 days before the date of the filing of the petition; . . .
> >
> > . . . .

**(5)** that enables such creditor to receive more than such creditor would receive if—

> **(A)** the case were a case under chapter 7 of this title;
>
> **(B)** the transfer had not been made; and
>
> **(C)** such creditor received payment of such debt to the extent provided by the provisions of this title.

**[3]** "The purpose of this provision is to discourage creditors 'from racing to the courthouse to dismember the debtor during his slide into bankruptcy' and to 'facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.' " *Valley Bank v. Vance (In re Vance)*, 721 F.2d 259, 260 (9th Cir. 1983) (citing H.R. Rep. No. 95-595, pt. 3, at 177-78 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6138). Section 547(b) furthers this goal by treating a debtor's bankruptcy estate as having been established ninety days prior to the debtor's filing of bankruptcy, which would have the incidental effect of making the debtor insolvent during that same time period. *See County of Sacramento v. Hackney (In re Hackney)*, 93 B.R. 213, 218 (Bankr. N.D. Cal. 1988) (explaining the policy purpose behind preference statutes). Since an insolvent debtor has no equity in the bankruptcy estate, any payments made during the ninety-day period are considered to have been made by the other creditors of the estate, not the debtor. *Id.* In order to prevent the creditors from losing their interests in the bankruptcy estate via the debtor's payments during the ninety-day period, the preference statute allows the creditors of the estate to recover certain payments made by the debtor during the preference period. *Id.*

**[4]** The plain language of § 547(b) does not except criminal restitution payments. State Fund has not argued there is

any clearly expressed legislative intent to the contrary or that any absurd results might flow from application of § 547(b) to criminal restitution payments. Under the plain language of § 547(b), therefore, we hold that criminal restitution payments (if they otherwise meet the statutory requirements of § 547(b)) are recoverable preferences in Chapter 7 bankruptcy.

Notwithstanding the plain language of the statute, State Fund now argues that § 547(b) does not apply to criminal restitution payments, because there is a judicial exception to preference statutes for criminal restitution payments and Congress did not explicitly abrogate that doctrine in enacting § 547(b). In the alternative, State Fund argues that the Silvermans' payment to State Fund does not meet the first requirement under § 547(b), because it was not "to or for the benefit of a creditor." We address each argument in turn.

### 1. There is no Judicial Exception for Criminal Restitution Payments under Section 547(b)

**[5]** State Fund argues that criminal restitution payments should be excepted from the preference statute, even if the statute does not, on its face, create such an exception. It bases this argument on the Supreme Court's holding in *Kelly*, 479 U.S. at 36. There, the Court was asked to determine whether criminal restitution payments were dischargeable in Chapter 7 bankruptcy. Section 523(a)(7) excludes from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit . . . ." Absent from this list are criminal restitution payments. Thus, 11 U.S.C. § 523(a)(7) does not, on its face, exclude criminal restitution payments from the default requirement that all debts are discharged in Chapter 7 bankruptcy.

Nevertheless, the Court noted that, "[i]n expounding a statute, [courts] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law,

and to its object and policy." *Kelly*, 479 U.S. at 43 (quotation marks and citation omitted). The Court, therefore, "consider-[ed] the language of §§ 101 and 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." *Id.* at 43-44. The Court observed that "Congress enacted [§ 523] in 1978 against the background of an established judicial exception to discharge for criminal sentences, including restitution orders . . . ." *Id.* at 46. Therefore, because Congress had not explicitly over-ruled the well-established judicial exception exempting crimi-nal restitution payments from dischargeability statutes, the Court declined to read the statute as doing so. *Id.* at 47.

In *Kelly*, the Court gave two reasons for finding a judicial exception to § 523 for criminal restitution payments: (1) there was a long history of this judicial exception for restitution payments in discharge statutes and (2) allowing criminal resti-tution payments to be discharged in bankruptcy would disturb state criminal proceedings. Neither of these rationales applies to § 547.

We find scant and unpersuasive evidence of an historical exception to preference statutes for criminal restitution pay-ments. Even the *Nelson* court admitted that "an historical exception to avoidance of restitution does not appear to be as clearly established as the exception for discharge of restitu-tion." *Nelson*, 91 B.R. at 906. Thus, whereas "Congress enacted [§ 523] against the background of an established judi-cial exception to discharge for criminal sentences, including restitution orders," *Kelly*, 479 U.S. at 46, Congress did not enact § 547 against a similar background.

Nor is the major policy concern underlying the judicial exception to § 523 for criminal restitution payments impli-cated under § 547(b). The *Kelly* Court noted "the basis for this judicial exception [in the discharge context], [is] a deep con-viction that federal bankruptcy courts should not invalidate

the results of state criminal proceedings." 479 U.S. at 47. The Court proceeded to note that, "[t]he right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. [The Supreme Court] has emphasized repeatedly 'the fundamental policy against federal interference with state criminal prosecutions.' " *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971)).

Allowing the Trustee to recover the restitution payment to State Fund will not interfere with California's state criminal proceedings. As *Kelly* made clear, criminal restitution payments are non-dischargeable.[3] Therefore, the Trustee's recovery of the restitution payment will not eliminate the Silvermans' obligation to pay the restitution money to State Fund post-bankruptcy; the Silvermans are stuck with that obligation until their debt has been fully satisfied. In addition, the Silvermans served their probation and are left with the criminal record. We cannot see, therefore, how application of § 547(b) to State Fund will compromise or dilute the Silvermans' state sentence (other than, of course, to potentially prolong the time when the Silvermans will fully satisfy their debt to State Fund).[4]

Additionally, allowing an exception to § 547(b) for criminal restitution payments would frustrate the purposes of the preference statute. Instead of allowing more equitable distri-

---

[3]And as explained *infra*, finding that a criminal restitution payment is non-dischargeable under § 523(a) does not preclude finding the same payment recoverable under § 547(b).

[4]The *Nelson* court relied entirely on this policy consideration in making its holding. *Nelson*, 91 B.R. at 906-07. Specifically, *Nelson* held that avoidance of criminal restitution payments poses significant interference with a state's criminal justice system, because "[f]ar beyond merely extinguishing a debt that *ought* to be paid in the future, the trustee seeks to recover restitution that *has* been paid." *Id.* at 906. As we have noted, however, criminal restitution payments are non-dischargeable and allowing a party to recover such payments under § 547(b) will not extinguish, or otherwise dilute, the defendant's obligations to make the payment.

bution of a bankruptcy estate's assets, excepting non-dischargeable debts like criminal restitution payments from § 547(b) would allow a debtor to pay off this non-dischargeable debt during the preference period and leave other creditors with nothing. For example, if the Silvermans' entire bankruptcy estate were worth the $101,531 paid to State Fund and this payment were not recoverable, then paying this debt before bankruptcy would enable the Silvermans to emerge debt free without having paid anything to their other creditors. Excepting criminal restitution payments from § 547(b) would, therefore, motivate debtors to pay off these non-dischargeable debts during the preference period, leaving all other debts to be extinguished in bankruptcy. An economically rational debtor would likely prefer this outcome over one where the debtor is left with non-dischargeable debts post-bankruptcy.

[6] The plain language of the statute does not except criminal restitution payments, and there is no historical justification or compelling policy reason for excepting them in spite of the plain language. We hold, therefore, that § 547(b) does not except criminal restitution payments wholesale; only where such payments do not meet the requirements of § 547(b) can they be excepted from this statute.

## 2.   The Restitution Payment was "to or for the Benefit of" State Fund

Alternatively, State Fund argues that, even if there is no general exception to § 547(b) for criminal restitution payments, the Silvermans' payment in this case did not meet the statutory requirements of § 547(b): the payment was not "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). Rather, State Fund argues, the restitution payment was "to or for the benefit of society as a whole." We disagree.

[7] State courts employ a variety of tools to further their sentencing goals, including ordering restitution payments to

the victim of a crime. "A restitution order requires the criminal offender to pay money or to render services to his victim in order to redress the loss he has inflicted." *Victim Restitution in the Criminal Process: A Procedural Analysis*, 97 Harv. L. Rev. 931, 932 (1984) (footnote omitted). The remedy of restitution is unique, as "it forces the defendant to confront, in concrete terms, the harm his actions have caused," in contrast to traditional fees or sentences, which are often "calculated without regard to the harm the defendant has caused." *Kelly*, 479 U.S. at 49 n.10. Thus, restitution furthers the traditional sentencing goals of rehabilitation and deterrence, by forcing defendants to directly witness the effects of their crimes. *Id.* The *purpose* of restitution, therefore, is not merely to compensate the victim; it is to further the state's sentencing goals. *Id.* at 49 n.10, 52-53. But of course, court-ordered restitution payments accomplish this goal by requiring the defendant to directly compensate a victim for some, if not all, of the victim's loss. *See id.* at 52-53. Thus, it only makes sense that a court-ordered restitution payment is "to or for the benefit of the [victim/]creditor," even if the restitution payment's broader purpose is to further the state's sentencing goals.

Here, the Silvermans defrauded State Fund out of approximately $101,531 (by State Fund's own estimate), which the state court ordered the Silvermans to pay back in full to State Fund. It seems rather clear that, even if this payment benefitted society as a whole, it also benefitted State Fund.

**[8]** To the extent it is not clear that the Silvermans' payment was "to or for the benefit of" State Fund, California's statutory scheme for criminal restitution payments erases any doubt. First, California Penal Code section 1202.4(f) notes that the amount of restitution awarded is "based on the amount of loss claimed by the victim." Though it is unknown "how much premium would have been due for the workers' compensation services provided to the Silvermans under their Policy, had they not committed fraud," the $101,531 eventually paid to State Fund was based on State Fund's own calcu-

lations. Thus, State Fund derived a benefit from the court-ordered restitution payment, because the payment was based on State Fund's own estimated loss.

Second, California Penal Code section 1202.4 holds that "in addition to any other penalty provided or imposed under the law, [the court] shall order the defendant to pay . . . [r]estitution to the victim . . . which shall be enforceable *as if the order were a civil judgment*." California Penal Code § 1202.4(a)(3) (emphasis added). Being able to enforce the restitution order as a civil judgment, State Fund had extensive control and discretion of the payment's execution, which further establishes State Fund's interest/benefit in the payment.

**[9]** Finally, California Penal Code section 1202.4(a)(1) commands that the victim "shall receive restitution directly from [the] defendant . . . ." Consistent with this statute, the Silvermans paid the restitution payment via a cashier's check made out only to State Fund. State Fund can hardly claim to have not received a benefit from such a direct and exclusive payment. Therefore, we hold that the Silvermans' payment was "to or for the benefit of" State Fund under § 547(b).[5]

State Fund, relying on language in *Kelly*, nonetheless argues that, because the payment was "to and for the benefit of society as a whole," it could not have been for its own ben-

---

[5]We also note our prior case law, which (though not directly on point) provides useful guidance. In *California Trade Technical School, Inc. v. United States (In re California Trade Technical Schools, Inc.)*, 923 F.2d 641, 648 (9th Cir. 1991), we addressed a Chapter 7 bankruptcy trustee's efforts to recover payments made by the debtor, California Trade Technical Schools, to the Department of Education for federal student assistance program monies that the debtor still owed. We noted that civil restitution payments owed the Department of Education under § 547(b)(1) were "to or for the benefit of a creditor [i.e., the Department of Education]." *Id.* That outcome underscores our holding here that payments that benefit society as a whole (as the payment to the DOE would have, and as the payment to State Fund would) may also benefit the specific creditor, which makes such payments "to or for the benefit of a creditor."

efit. In *Kelly*, the Supreme Court stated that, "[t]he criminal justice system is not operated primarily for the benefit of victims, *but for the benefit of society as a whole*." 479 U.S. at 52 (emphasis added). It further noted that "restitution orders imposed in such proceedings *operate 'for the benefit of' the State*." *Id.* at 53 (emphasis added). Thus, because "[c]riminal restitution does not create a financial debt between private individuals, but rather to the People of the State of California," State Fund argues, the restitution payment could not be "to or for the benefit of" State Fund.

This argument ignores the contextual differences between the dischargeability statute being analyzed in *Kelly* and the preference statute being analyzed here. In *Kelly*, the Court was analyzing 11 U.S.C. § 523(a)(7), which excepts from discharge in bankruptcy any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ."[6] As noted, the *Kelly* court held that § 523 applied to criminal restitution payments. Having so concluded, the Court proceeded to evaluate whether criminal restitution payments were "to and for the benefit of a governmental unit" and "not compensation for actual pecuniary loss." *Kelly*, 479 U.S. at 52. Our analysis here, however, examines whether a payment was made "to or for the benefit of a creditor" under § 547(b). The two standards are not mutually exclusive.

**[10]** Merely because a payment is "to and for the benefit of society" under § 523(a)(7) does not mean that payment cannot also be "to or for the benefit of a creditor" under

---

[6]To be clear, the Supreme Court interpreted the phrase "to and for the benefit of a governmental unit" to more broadly mean "[to and] for the benefit of society as a whole." *Kelly*, 479 U.S. at 51-52. Thus, for purposes of this analysis, references to a payment being "to and for the benefit of society as a whole" under § 523(a)(7) are the equivalent of being "to and for the benefit of a governmental unit" under that same section.

§ 547(b)(1). Nothing in *Kelly* suggests that we should hold to the contrary. Nor does it make sense to hold that a restitution payment, which benefits society as a whole, cannot also benefit the victim, who is paid as part of the restitution payment. Moreover, the *Kelly* Court's holding that restitution payments are not assessed for the purpose of compensating the victim does not preclude our finding that restitution payments may nonetheless benefit the victim-recipients. And of course, if the rule were otherwise, non-dischargeable criminal restitution payments could never be recoverable as preferences. As noted above, such a result would frustrate the purposes of the preference statute. Therefore, we do not read *Kelly* to hold that restitution payments are exclusively "to and for the benefit of society as a whole."

**[11]** These considerations all lead us to conclude that, while the restitution payment to State Fund may have benefitted society, it was also "to or for the benefit" of the Silvermans' creditor, State Fund. The Silvermans' payment, therefore, meets the first prong of § 547(b). Because State Fund concedes the remaining requirements have been met, we hold the Silvermans' restitution payment to State Fund was a recoverable preference under § 547(b).

## IV.    Conclusion

The bankruptcy court did not err in declining to apply the ruling in *Nelson*; district courts do not bind bankruptcy courts in other districts. Nor did the district court err in allowing the Trustee to recover the Silvermans' payment to State Fund. The plain language of § 547(b) does not except criminal restitution payments, and we do not disrupt that plain language in our holding today. While we do not read statutes to abrogate well-established common law in the absence of any explicit congressional intent to do so, there is simply no evidence of a well-established judicial exception for criminal restitution payments from preference statutes. Further, such an exception would not make sense in light of the policy goals of the pref-

erence statute. Lastly, the payment was "to or for the benefit of" State Fund, even if it also indirectly benefitted society. We, therefore, affirm the district court's grant of the Trustee's summary judgment motion.

**AFFIRMED**