**In re William HILL and Kathleen Hill, Debtors.**

**No. 09–19516–MM13.**

United States Bankruptcy Court, S.D. California.

Nov. 29, 2010.

Bruce R. Babcock, San Diego, CA, for Debtor.

## MEMORANDUM DECISION ON LIEN STRIP AND CONFIRMATION OF PLAN

MARGARET M. MANN, Bankruptcy Judge.

Debtors William Hill and Kathleen Hill ("the Debtors") filed this Chapter 13 case five days after they received a Chapter 7 discharge in a previous case—a sequence of events colloquially described as a "Chapter 20" case. *See Grandstaff v. Casey (In re Casey)*, 428 B.R. 519, 521 (Bankr.S.D.Cal.2010). In their Chapter 20 case, the Debtors seek to confirm their Chapter 13 plan and strip[1] the junior lien of CIT/Vericrest Financial, Inc. ("CIT") against their principal residence pursuant to 11 U.S.C. §§ 506(a), (d), and 1322, because their home has insufficient value to support the lien. Since the Debtors received a discharge in their Chapter 7 case, the Debtors cannot receive a new discharge for four years. 11 U.S.C. § 1328(f).[2]

The Debtors' Chapter 20 lien strip motion raises a number of issues that have been debated in the courts:

1. Whether a lien strip can be granted under the authority of § 506(d) without regard to whether a plan is confirmed?

2. Whether a discharge is necessary to confirm a plan in Chapter 20?

3. What is the proper treatment of a stripped lien claim under a Chapter 20 plan?

4. How is the stripped lien claim quantified in Chapter 20?

5. Under what circumstances may a Chapter 20 plan be found to be filed in good faith?

The Court resolves these issues in this case as set forth in this Memorandum Decision, concluding that even though the CIT lien cannot be stripped under § 506(d), the Debtors can confirm a plan in good faith that provides for a lien strip even without a discharge. CIT's claim was already discharged in the Chapter 7 case, and the provisions of § 1325(b)(5) applicable to secured claims do not apply since there is no value in the residence to secure the CIT lien. CIT has an *in rem* claim as quantified in its proof of claim, to be treated as an unsecured claim under the Plan.

Accordingly, the Court will confirm the Debtors' plan and grant their motion to strip the CIT lien under the confirmed plan alone.

### A. *Jurisdiction*

The Court has subject matter jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### B. *Background*

The Debtors filed a Chapter 7 petition on September 16, 2009 and received a discharge in that case on December 16, 2009. Five days after their Chapter 7 discharge was granted, on December 21, 2009, the Debtors filed this Chapter 13 case. The Debtors' income is below the median for

---

**1.** The parlance for this process of valuing a lien at zero and removing it from title is "lien stripping." *See Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

**2.** Hereafter, references to code sections refer to Title 11 of the United States Code, also referred to as the "Bankruptcy Code" or "Code" unless otherwise specified. References to a "Rule" refer to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

this district. Kathleen Hill is a self-employed web designer and William Hill now works as a glazier in the construction business, although he was unemployed until one month before the Debtors filed their Chapter 13 petition. They have three children, two of whom are minors. The Debtors have no equity in their assets, and no excess disposable income that they have not devoted to payment of their creditors. Nor have they a reason to project a higher income in the future.

On Schedule A of their Schedules of Assets and Liabilities, the Debtors listed their primary residence located at 762 Taft Ave. El Cajon, CA 92020 ("Residence") with a value of $300,000. They later submitted an appraisal valuing their Residence at $252,000. According to Schedule D, the Residence is encumbered by: 1) a senior lien securing a debt of $369,000; 2) CIT's junior lien securing a debt listed in its proof of claim at $78,955.81; and 3) a secured claim of $1,565 owed to the San Die go County Tax Collector. The Debtors also have student loans totaling $36,109. No party has challenged the accuracy of the Debtors' schedules or other financial disclosures in this case.

Paragraph 19 of the Debtors' initial and amended Chapter 13 Plans (collectively the "Plan") proposes to strip CIT's lien under § 1322 because the value of the Residence is less than the amount of the senior lien. The Debtors also brought a separate motion to strip the lien under § 506(a) and (d) ("Lien Strip Motion") for the same reason. The three-year Plan proposes monthly payments of $952, an amount that is $45 greater than the Debtors' disposal income

calculated pursuant to the Official Form B 22.[3] The Debtors' Plan does not seek a discharge, nor does it propose to modify any secured debt. The unsecured debts under the Plan are projected to receive a 16.6% dividend. CIT's secured and unsecured claims are valued at zero under the Plan and receive nothing.

Although CIT did not oppose the Lien Strip Motion or object to the Plan, the Court requested further briefing on the issues addressed in this Memorandum Decision to satisfy its independent duty to ensure that the Plan meets all confirmation requirements. *In re Szostek*, 886 F.2d 1405, 1412 (3d Cir.1989). David Skelton, the Chapter 13 Trustee, then objected to confirmation on several grounds, including that the Debtors' Plan was not proposed in good faith because of the Debtors' previous discharge.[4]

The Debtors have complied with all of their pre-confirmation obligations under their Plan and the Code. Upon resolution of the issues addressed in this Memorandum Decision, the Debtors' Plan is ready for confirmation.

**C. Section § 506(d) Does Not Authorize Chapter 13 Lien Strips.**

■ Although the lien strip was sought as part of the Plan, the Debtors' Lien Strip Motion separately sought a declaration that CIT's lien was void under § 506(d), citing *Hart v. San Diego County Credit Union*, No. 09CV1017 JLS (POR) (S.D.Cal. March 1, 2010) (order reversing and remanding decision of bankruptcy court). *See also In re Fuller*, 255 B.R.

---

**3.** Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

**4.** The Debtors had believed they had resolved all of the Trustee's objections to confirmation prior to the Court's request for additional

briefing. They objected to the Trustee's additional brief raising the good faith issue. Since the Court overrules the Trustee's good faith arguments in opposition to confirmation, whether the Trustee should be bound to his earlier consent to the Plan is moot.

300, 306 (Bankr.W.D.Mich.2000) (same). *Hart* held that a lien could be stripped under § 506(d) relying upon a number of bankruptcy court decisions, and noting the absence of contrary Ninth Circuit analysis. *Hart* at 10–11.

While *Hart* is a decision of the District Court in this district, the Court respectfully does not feel it is binding authority.[5] Rather, this Court feels compelled to follow the Supreme Court's statutory interpretation of § 506(d) found in *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), which held § 506(d) does not authorize a lien strip in a Chapter 7 case:

> We hold that § 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

The statutory ambiguity to which the Supreme Court referred in its holding is that two subsections of the same statute, § 506(a) and (d), use the same terminology: "allowed secured claim," but then apply the term differently. Subsection (a) of § 506, as implemented by Bankruptcy Rule 3012, is the basis for lien strips because it reduces the amount of the secured claim to the value of the collateral. Subsection (d) of § 506 renders a lien void if the claim is disallowed under § 502, for reasons other than the value of the collateral. Hence, *Dewsnup*, 502 U.S. at 419–20, 112 S.Ct. 773, held that whether a lien can be avoided under § 506(d) turns on whether its underlying claim has been disallowed, not on the value of the collateral. *See also In re Fenn*, 428 B.R. 494, 498 (Bankr.N.D.Ill.2010). To resolve the statutory ambiguity inherent in § 506, the Supreme Court declined to permit "the security-reducing provision of (a)" to alter the plain language of the "lien-voiding provision of § 506(d)." It therefore held that § 506(d) must be limited in use to where the underlying claim is invalid under § 502, because that subsection cannot be used to allow lien strips under § 506(a). *Dewsnup*, 502 U.S. at 413, 112 S.Ct. 773.

*Dewsnup* found this limited use for § 506(d) was consistent with pre-Code practice that did not permit lien strips except in reorganization cases. *Id.* at 419–20, 112 S.Ct. 773. The Ninth Circuit in *In re Enewally v. Washington Mutual Bank*, 368 F.3d 1165, 1169–70 (9th Cir.2004), recognized this distinction, and held § 506(d) did not permit lien strips in Chapter 7 cases:

> The rationales advanced in the *Dewsnup* opinion for prohibiting lien stripping in Chapter 7 bankruptcies, however, have little relevance in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12, and 13, where lien stripping is expressly and broadly permitted, subject only to very minor quali-

---

**5.** A bankruptcy court is not bound by a district court's decision from another district. *State Compensation Ins. Fund v. Zamora (In re Silverman)*, 616 F.3d 1001, 1005 (9th Cir. 2010). While the Ninth Circuit reserved the issue of whether bankruptcy courts are bound by district court decisions within the district where the bankruptcy court sits, it recognized in *Zamora* that such a requirement "could create the same problem of subjecting bankruptcy courts to a non-uniform body of law." *Id.* Particularly in light of the controlling precedent of *Dewsnup*, 502 U.S. at 417, 112 S.Ct. 773 that compels a different outcome, this Court does not follow the precedent in *Hart* at 10–11.

fications. The legislative history of the Code makes clear that lien stripping is permitted in the reorganization chapters.

(Citations omitted.)

Since § 506(d) does not permit lien strips in Chapter 7 cases, the Bankruptcy Code operates to prevent it from being the statutory basis for lien strips in reorganization cases as well. Under a bankruptcy specific rule of statutory construction, § 103(a), § 506(d) must apply in all bankruptcy cases if it is to apply in any. Section 103(a) specifies that the provisions of Chapter 5 of the Code, such as § 506(d), are applicable to all bankruptcy cases. If lien strips were to be authorized by § 506(d) alone, that sub-section would apply in equal force in Chapter 7 and reorganization cases. Allowing lien strips in Chapter 7 cases would run afoul of *Dewsnup*, which barred lien strips in Chapter 7. *Dewsnup*, 502 U.S. at 419–20, 112 S.Ct. 773. *See* 4 Collier on Bankruptcy ¶ 506.06 at 506.06[1][c] (16th ed. 2010) ("there is no principled way to conclude that, although section 506(d) does not authorize lien stripping in chapter 7 cases, it has a different meaning in Chapter 11, 12 and 13 matters").

█ Statutory conflict with § 103(a) can be avoided by resort to the specific plan provisions of § 1322 instead of § 506(d) as authorization for lien strips in Chapter 13. Making no mention of § 506(d) in its decision, the Supreme Court in *Nobelman v. American Savings Bank*, 508 U.S. 324, 327–29, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) held that § 1322 permitted the debtor to modify "the rights of both secured and unsecured creditors, subject to special protection for creditors whose claims are secured only by a lien on the debtor's home." *Id.* at 327, 113 S.Ct. 2106. Section 1322 is a superior source of authorization for lien strips than § 506(d) because it contains statutory safeguards to protect the lien rights of holders of secured claims in Chapter 13.[6] *See also* §§ 1129(b), 1225, 1322 and 1325 (containing statutory provisions applicable to reorganization cases.) Lacking these protections, § 506(d) is a poor substitute. *See* 4 Collier on Bankruptcy at 506.06[1][c]. As recognized in *Dewsnup*, 502 U.S. at 419–20, 112 S.Ct. 773, the function of § 506(d) should be limited to voiding liens for disallowed claims under § 502 rather than stretched beyond its appropriate use.

**D. *The Unavailability Of A Discharge Does Not Prohibit Lien Strips In Chapter 20.***

█ Several other bankruptcy courts have held a debtor's inability to receive a discharge in a Chapter 20 case prevents the debtor from stripping unsecured liens under a Chapter 13 plan. *See Fenn*, 428 B.R. 494, 504 (Bankr.N.D.Ill.2010); *In re Mendoza*, 2010 Bankr.LEXIS 664, 2010 WL 736834 (Bankr.D.Colo.2010); *In re Blosser*, 2009 Bankr.LEXIS 1049, 2009 WL 1064455 (Bankr.E.D.Wis.2009); *In re Winitzky*, 2009 Bankr.LEXIS 2430 (Bankr.C.D.Cal.2009); *In re Jarvis*, 390 B.R. 600 (Bankr.C.D.Ill.2008); *In re Lilly*, 378 B.R. 232, 236–37 (Bankr.C.D.Ill.2007). This Court respectfully disagrees, and is

---

**6.** As an example of how these safeguards operate, the *Nobelman* Court declined to strip the lien since the creditor held an undersecured claim against the debtors' residence, and § 1322(b)(2) protected the creditor's lien from being stripped. *Id.* at 328–29, 113 S.Ct. 2106. If the lien is fully unsecured under § 506(a), however, the creditor holds no secured claim and its lien may be stripped under a Chapter 13 plan under § 1322. *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1226–27 (9th Cir.2002); *In re Lam*, 211 B.R. 36, 41 (9th Cir. BAP 1997). Neither *Zimmer*, 313 F.3d at 1226–27, nor *Lam*, 211 B.R. at 41, relied on § 506(d) to permit the lien strip.

instead persuaded by *In re Tran,* 431 B.R. 230, 235 (Bankr.N.D.Cal.2010), that lien strips are permitted in Chapter 20 cases even without a discharge, if the plan otherwise complies with the requirements of the Code.

Nothing in §§ 506, 1322, 1325 or 1328(f), "or any other section of the Bankruptcy Code provides that a chapter 13 debtor's right to modify or strip off liens is conditioned on the debtor being eligible for a discharge." *Tran,* 431 B.R. at 235. To judicially impose a discharge requirement on the Debtors' ability to strip the CIT lien when none is required by statute cannot be reconciled with *Johnson v. Home St. Bank,* 501 U.S. 78, 87, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991): "Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief." *Id.* at 87, 111 S.Ct. 2150. By its plain terms, § 1328(f) does not require another discharge when a later case is filed; it simply denies an untimely discharge in the later case. *See, e.g., United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re Silverman,* 616 F.3d 1001, 1006 (9th Cir.2010) (statutory plain language must be respected).

Before permitting the restructure of discharged mortgage debt in a Chapter 20 case, *Johnson* first defined the characteristics of that debt. 501 U.S. at 82–83, 111 S.Ct. 2150. The Supreme Court held that even though the Chapter 7 discharge extinguished the debtors' personal liability for the mortgage debt, the *in rem* rights of the mortgage creditor survived. These *in rem* rights constituted a "claim" under § 101(5) that could be restructured in a Chapter 13 plan. In other words, *Johnson* concluded the mortgage debt simply changes character from recourse to non-recourse because of the discharge. *Id.* at 82–84, 111 S.Ct. 2150. *See also In re Haque,* 331 B.R. 524 (Bankr.D.Mass.2005).

Since the CIT debt was already discharged, or changed to non-recourse status in the Chapter 7 case, a second discharge for the Debtors in this Chapter 13 case would be redundant. There is no Chapter 13 counterpart to § 1111(b) applicable in Chapter 11 cases to transform CIT's discharged non-recourse debt back to recourse debt. Congress chose not to fashion such a counterpart for Chapter 20 cases, and this Court cannot judicially create one. *See In re Medina,* 2010 Bankr.LEXIS 1128, *6 fn. 5 (Bankr. N.D.Cal.2010); *In re Montgomery Ward,* 388 B.R. 49, 66 (Bankr.Del.2008). Since the Debtors' Chapter 7 discharge simply brought about a change in recourse status, the discharged CIT debt also does not spring back to life in their Chapter 20 case such that any unpaid amounts become due upon completion of the Plan. *Tran,* 431 B.R. at 237; *In re Geiger,* 260 B.R. 83, 88 (Bankr.E.D.Pa.2001); *In re Akram,* 259 B.R. 371, 374 (Bankr.C.D.Cal.2001). *Contra, Lilly,* 378 B.R. at 236.

Since CIT's non-recourse debt would not be affected by a further discharge, no discharge is necessary to confirm the Debtors' Plan.

### E. Section 1325(a)(5) is Inapplicable Since CIT is an Unsecured Creditor.

■ Those courts which prohibit lien strips in Chapter 20 cases also concentrate on the § 1325(a)(5)(B)(i)(I) requirement that the holder of a secured claim retain its lien until payment in full or discharge. These cases reason that since the Chapter 20 debtor cannot receive a discharge, the statutory condition of discharge found in § 1325(a)(5)(B)(i)(I) cannot be satisfied, and the lien cannot be stripped. *See*

*Fenn,* 428 B.R. at 500; *Jarvis,* 390 B.R. at 606–07.

Because § 1325(a)(5) only applies to holders of secured claims, this Court respectfully disagrees that the statute imposes the condition of a discharge to allow a Chapter 20 lien strip. Section 1325(a)(5) has no applicability to unsecured claims, which are separately governed by the confirmation requirements of § 1325(a)(4). Controlling Ninth Circuit precedent treats CIT's claim as an unsecured claim in this Chapter 13 case under § 1322. *Zimmer,* 313 F.3d at 1226–27. To remain true to the holding of *Zimmer,* 313 F.3d at 1226–27, CIT's unsecured claim cannot logically be treated differently under § 1325 than it is treated under § 1322. *United States v. Snyder,* 343 F.3d 1171, 1179 (9th Cir.2003), held a creditor who did not hold a secured claim pursuant to § 506(a), had no right to other benefits of "secured status in the bankruptcy proceeding." *See also Smith v. Rojas (In re Smith),* 435 B.R. 637, 648 (9th Cir.BAP2010) (lien stripped under § 506(a) is included as an unsecured debt for Chapter 13 eligibility purposes); Keith M. Lundin & William H. Brown, *"Lien Stripping and the Debtor Ineligible for Chapter 13 Discharge,"* www.ch13online. com (questioning the application of § 1325(a)(5) to a wholly unsecured claim).

That CIT's claim is a non-recourse claim under *Johnson,* 501 U.S. at 82–84, 111 S.Ct. 2150, should not affect the applicability of § 506(a) or *Zimmer,* 313 F.3d at 1226–27, to treat CIT as an unsecured creditor under the Plan. *Tran,* 431 B.R. at 235; *Geiger,* 260 B.R. at 88; *Akram,* 259 B.R. at 374. Nothing in either the statutory language of § 506(a) or the analysis of *Zimmer,* 313 F.3d at 1226–27, indicates non-recourse status is relevant to the lien stripping process. In fact, the germane provisions of Chapter 13 can be easily applied to the Debtors' Plan regardless

of the recourse status of CIT's debt. Because CIT holds an unsecured claim, its claim is subject to modification of its rights under § 1322(b)(2). As the holder of an unsecured claim under § 1325(b)(4), CIT need only be paid its pro rata share of the Debtors' disposable income calculated under § 707(b) and its pro-rata share of any equity in the Debtors' assets. Since § 1322(a)(3) requires that claims within the same class be treated in the same manner, CIT is "entitled to be paid whatever [is paid generally to unsecured creditors], the prior chapter 7 discharge notwithstanding." *In re Gounder,* 266 B.R. 879, 881 (Bankr.E.D.Cal.2001).

■ Even if the § 1325(a)(5)(B)(i)(I) lien retention provision applied to lien strips in Chapter 20, it would be inapplicable in this case. While Chapter 11 cases provide a mechanism for plan acceptance by creditors, § 1325(a)(5)(B) only applies where the holder of the secured claim objects to the Chapter 13 plan. Acceptance is implied when no objection is raised. *Andrews v. Loheit (In re Andrews),* 49 F.3d 1404, 1409 (9th Cir.1995). Even if CIT were subject to § 1325(a)(5)(B), CIT's failure to object to the Plan here would translate into acceptance of the Plan. CIT's implied acceptance of the Plan would satisfy § 1325(a)(5)(A) in this case even without another discharge.

The concerns noted in *Fenn,* 428 B.R. at 503–504, that a lien strip could deprive a creditor of its lien without it receiving the full benefit of the plan, are misplaced. This Chapter 20 case will end either through Plan consummation with CIT receiving its share of the unsecured creditor dividend, or dismissal. In the event of dismissal, the confirmed Plan will be effectively vacated. *In re Nash,* 765 F.2d 1410, 1413 (9th Cir.1985) (once Chapter 13 case is converted to Chapter 7, order confirm-

ing Chapter 13 plan is no longer in force[7]); *In re Whitmore,* 225 B.R. 199, 201 (Bankr.D.Idaho 1998) (after the Chapter 13 case was dismissed and the plan no longer in force, the IRS was no longer bound by the plan's provisions). Since CIT's lien is stripped under the Plan, not under § 506(d), its lien will remain until the Plan is consummated.

### F. CIT's Claim Is Not Allowed At Zero.

■ The Debtors' Plan quantifies the CIT lien at zero. However, permitting CIT's lien to be stripped under the Plan under § 506(a) does not determine its amount, but only whether the lien is to be treated as unsecured. Section 506(a) only prescribes how a secured claim is to be treated, not whether the underlying claim is allowed or disallowed. 4 Collier on Bankruptcy ¶ 506.01 (16th ed. 2010). *See also Fenn,* 428 B.R. at 499. Instead, § 502 serves that function.

Since CIT filed a proof of claim for $78,955.81, under § 502(a) that proof of claim is "deemed allowed" in that amount, "unless a party in interest ... objects." Unless the Debtors file an objection to the CIT claim, CIT must receive under the Plan its pro-rata share of the distribution to the unsecured creditors in the proof of claim amount of $78,955.81.

### G. The Debtors Did Not Act In Bad Faith In Proposing Their Plan.

■ The Court has an independent duty to review the issue of good faith under § 1325(a)(3). "(B)ankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of [the Bankruptcy Code]." *United Student Aid Funds, Inc. v. Espinosa,* — U.S. ——, 130 S.Ct.

1367, 1381, 176 L.Ed.2d 158 (U.S.2010). *See also In re Warren,* 89 B.R. 87, 90 (9th Cir. BAP 1988). Applying the germane *Warren* factors, the Court finds the Debtors' Plan was proposed in good faith.

#### 1. The Debtors Have a Need for Bankruptcy Other Than To Do a Lien Strip.

In *Tran,* the court found that the debtor filed the Chapter 13 case solely for the purpose of the lien avoidance, and therefore as an attempt to "unfairly manipulate the Bankruptcy Code to skirt the Supreme Court's holding in *Dewsnup.*" *Tran,* 431 B.R. at 238. *See also Warren,* 89 B.R. at 95 (Chapter 13 plans "that are in essence veiled chapter 7 cases" should not be confirmed).

The Debtors are insolvent and Mr. Hill was unemployed up to one month before the Chapter 13 case was filed. The Debtors have non-dischargeable student loans to pay, and must cure $18,000 in arrearage on the senior lien on their Residence, along with the secured property taxes, in their Plan. They are paying more than their disposable income to creditors. The Debtors thus have valid reorganization goals since the Plan represents their best effort to pay creditors. *In re Villanueva,* 274 B.R. 836, 841 (9th Cir.BAP2002).

#### 2. The Debtors Acted Equitably in Proposing the Plan.

Considering their financial circumstances, the Debtors acted equitably and with good intentions in proposing their Plan. *See In re Chinichian,* 784 F.2d 1440, 1444 (9th Cir.1986). There is no issue here regarding the Debtors' compliance with their responsibilities under the Code, or their motivation or sincerity.

---

7. Although this principle is unaffected, the holding of Nash relating to distribution of funds from the Chapter 13 estate was superseded by the enactment of § 1326.

### 3. The Debtors Are Insolvent And Are Devoting All of Their Income to the Plan.

The Debtors have no equity in their non-exempt assets, and are devoting a sum greater than their disposable income to the Plan. Nevertheless, this generates only a minimal dividend to pay their creditors for the next three years. As stated by the Ninth Circuit in another Chapter 20 case where the debtors had devoted all of their disposable income to the plan, the "fact that [a debtor's] plan provides for no payment to unsecured creditors is not sufficient to conclude that the plan was submitted in bad faith." *In re Metz*, 820 F.2d 1495, 1498 (9th Cir.1987) (citations omitted). This Court similarly does not find any evidence of bad faith here.

### 4. The Debtors Did Not Use Serial Filings to Avoid Payment to Creditors.

The Debtors' Chapter 7 case concluded with no distribution to unsecured creditors. They had less net income to devote to payment of creditors in this first case than in this second case. As a result, no creditor will suffer worse treatment due to this Chapter 20 case. *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir.1982) (where the unsecured creditors would have received nothing in Chapter 7, the 1% Chapter 13 plan was not filed in bad faith).

Considering all of these factors, the Court does not find any evidence of bad faith in this case.

### H. Conclusion

The CIT claim has traveled a peripatetic path to get to this point: from recourse[8] secured before the Chapter 7 bankruptcy, to non-recourse secured in the Chapter 7

bankruptcy, to nonrecourse unsecured in this Chapter 13 case. Nevertheless, CIT stands to receive more from the combined Chapter 20 bankruptcy process than it might otherwise have received: its pro-rata share of the distribution to unsecured creditors. CIT has not objected to this treatment and has merely filed a proof of claim to share in any distribution to unsecured creditors, minimal though it may be. The Debtors' assets and income, and CIT's collateral, do not appear sufficient to improve upon this outcome on the facts before this Court.

The Court thus grants the Debtors' motion to void the lien of CIT effective upon consummation of the Debtors' Plan. The Court will also confirm the Debtors' Plan. However, the CIT claim will not be allowed in the amount of zero under the Plan.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for the Debtors is directed to prepare an order in accordance with this Memorandum Decision within ten (10) days of the date of entry.

IT IS SO ORDERED.

---

8. The Court does not address whether the CIT was originally a non-recourse loan due to the California anti-deficiency law applicable to residential purchase money mortgages (Cal. Civ.Code 580(b)), because the parties did not raise this issue.