FILED

MAY 09 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                    ) BAP No.    EC-11-1349-PaDMk
                                          )
ANGEL LEPE,                               ) Bk. No.    10-60264
                                          )
                          Debtor.         )
_____        )
                                          )
MICHAEL H. MEYER, Chapter 13              )
Trustee,                                  )
                                          )
                          Appellant,      )
                                          ) **CORRECTED OPINION***
v.                                        )
                                          )
ANGEL LEPE,                               )
                                          )
                          Appellee.       )
_____        )

Argued and Submitted on March 22, 2012
at Sacramento, California

Filed - May 9, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Hon. Whitney Rimel, Bankruptcy Judge, Presiding

Appearances:    Deanna K. Hazelton argued for appellant Michael H.
                Meyer; Thomas O. Gillis argued for appellee Angel
                Lepe.

Before:  PAPPAS, DUNN and MARKELL, Bankruptcy Judges.

---

    *  Two minor revisions have been made to this Opinion,
originally issued on May 9, 2012, as reflected in the Clerk's
Notice Re Clerical Corrections filed contemporaneously herewith.

PAPPAS, Bankruptcy Judge:

Chapter 13[1] trustee Michael H. Meyer ("Trustee") appeals the order of the bankruptcy court confirming the amended plan of debtor Angel Lepe ("Lepe"). We AFFIRM.

**FACTS**

The material facts are undisputed.

Lepe filed a petition for relief under chapter 13 on September 2, 2010. In his accompanying schedules, Lepe listed assets valued at $363,900, liabilities of $581,380 (including $549 of unsecured debts), monthly income of $2,631, and expenses of $2,481. In Lepe's original chapter 13 plan, he proposed to pay directly the payments on the first mortgage on his house, to "strip" the second mortgage on his house and to treat that creditor's claim as unsecured, and to pay $150 per month for 36 months to Trustee. The payments to Trustee would provide an estimated 17.25 percent dividend to Lepe's unsecured creditors, including the soon-to-be-unsecured second mortgage creditor's claim.

None of the creditors objected to confirmation of Lepe's plan, including the second mortgage secured creditor whose lien would be stripped. However, on October 20, 2010, Trustee objected to confirmation. Trustee argued that neither Lepe's plan or petition had been filed in good faith, as required by §§ 1325(a)(3) and (a)(7), respectively. Trustee alleged that,

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

since Lepe's total unsecured debt at the time he filed his petition was only $549, and because he had monthly income sufficient to pay all of his monthly expenses and his debts, the only reason Lepe had filed the bankruptcy case was to use chapter 13 to strip the second mortgage on his house. In Trustee's opinion, Lepe's strategy amounted to an abuse of the bankruptcy laws. Trustee later submitted a brief identifying several errors in Lepe's schedules, and expanding on his argument concerning Lepe's alleged lack of good faith.

Lepe filed a First Amended Plan on February 24, 2011. It increased the monthly plan payments to Trustee from $150.00 to $275.00, which in turn increased the proposed payback on unsecured claims.[2] Lepe also amended his schedules to include certain assets not disclosed in the original filings.

---

[2] Trustee accepted without question Lepe's estimate that dividends to unsecured creditors would amount to 17.25 percent under the original plan, and 17.5 percent under the First Amended Plan. The bankruptcy court relied upon the latter estimate in its finding that the payments to unsecured creditors under the First Amended Plan would be "not insignificant." Moreover, neither party has questioned these estimates in this appeal.
Under Lepe's original plan, the plan payments were $150 per month for 36 months, for a total of $5,400. The unsecured claims were approximately $29,540, including the unsecured portion of the second mortgage after the lien strip. Allowing for some trustee fees and administrative expenses, this yields approximately a 17.25 percent dividend for creditors from the payments over the term of the plan.
However, we are unable to confirm that Lepe's First Amended Plan would provide a 17.5 percent dividend to unsecured creditors. That plan called for payments of $150 for five months ($750), then $275 for 31 months ($8,525), for a total of $9,275. Even allowing for increased administrative fees, the increased payments proposed in the First Amended Plan should result in something closer to a 30 percent return to unsecured creditors, not 17.5 percent.
If there is error in these calculations (either ours or that of the parties), it is harmless. Trustee has not challenged the calculations under the First Amended Plan, and because the bankruptcy court determined that a 17.5 percent dividend was "not insignificant," any higher dividend to unsecured creditors would also presumably be "not insignificant."

-3-

Trustee submitted a detailed opposition to Lepe's amended plan on March 24, 2011. In addition to repeating earlier arguments on good faith, Trustee discussed the separate chapter 13 case filed by Lepe's girlfriend, Elsa Antonio, and how the cases were related.[3] Lepe filed a response to Trustee's submissions on April 29, 2011; Trustee filed a reply brief on May 5, 2011.

At a June 2, 2011 confirmation hearing concerning both Antonio's plan and Lepe's amended plan, the bankruptcy court announced its findings of fact, conclusions of law, and decision regarding confirmation. In material part, the court found and concluded that:

- Any inaccuracies in Lepe's schedules were occasioned by his lawyer's inadvertence, and did not evidence any lack of good faith by Lepe.

- The amount of payments being made under Lepe's amended plan to unsecured creditors was "not insignificant."

- The bankruptcy court was not persuaded that "the fact that [Lepe and Antonio] don't have very much unsecured debt makes [them] ineligible to be a debtor in chapter 13."

- "[I]t is a proper reorganization purpose to deal with secured claims as well as to deal with unsecured claims" in chapter 13 cases.

- The second mortgage creditor, whose lien was being stripped in Lepe's plan, had not opposed confirmation.

---

[3] Trustee did not include in the record on appeal any of the documents or pleadings from the Antonio bankruptcy case. As a result, although Trustee and the bankruptcy court frequently refer to the Antonio case, the Panel must rely on the "second-hand" information about the financial relationship between Lepe and Antonio as related in argument by the parties.

- While deeming the decision "a very close call," the bankruptcy court concluded both plans should be confirmed.[4]

The bankruptcy court entered the order confirming Lepe's amended plan on July 1, 2011. Trustee filed this timely appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). The Panel has jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court erred in finding that Lepe's First Amended Plan was filed in good faith.

Whether the bankruptcy court erred in confirming Lepe's First Amended Plan.

**STANDARDS OF REVIEW**

The bankruptcy court's determination regarding a debtor's good faith in proposing a chapter 13 plan for confirmation is a factual finding reviewed under the clearly erroneous standard. Figter Ltd. v. Teachers Ins. & Annuity Ass'n (In re Figter Ltd.), 118 F.3d 635, 638 (9th Cir. 1997); Ho v. Dowell (In re Ho), 274 B.R. 867, 870 (9th Cir. BAP 2002).

Whether a chapter 13 plan should be confirmed involves mixed questions of fact and law, where factual determinations are reviewed under the clearly erroneous standard, and determinations of law are reviewed de novo. Andrews v. Loheit (In re Andrews),

---

[4] In addition, the bankruptcy court reduced the attorney's fees allowed to the lawyer representing both Lepe and Antonio from $5,000 to $3,500 in the Antonio case, and from $3,500 to $3,000 in Lepe's case. Since Antonio paid these fees in cash before the bankruptcy cases were filed, the court ordered that the difference be returned to Antonio.

-5-

155 B.R. 769, 770 (9th Cir BAP 1993).

**DISCUSSION**

I.

In order to confirm a plan, the debtor must show, and the bankruptcy court must find, that the debtor's "plan has been proposed in good faith and not by any means forbidden by law." § 1325(a)(3). In his brief, Trustee concedes that the "debtor was not 'bad' in any way." Even so, Trustee argues that, given these facts, the bankruptcy court's order confirming Lepe's amended plan must be reversed because Lepe "fails to pass the 'good faith standard [not] because the debtor is 'bad,' but because what the debtor is proposing, stripping a second mortgage while being otherwise <u>solvent</u>, is not within the <u>spirit or purpose</u> of Chapter 13." It is the Trustee's view that, as a matter of law, any debtor who is "otherwise able to pay [his or her] debts," and whose "sole purpose" for filing for relief under chapter 13 is to strip a totally unsecured lien on the debtor's home, while paying unsecured creditors (including the mortgage creditor holding the stripped lien) only a percentage of that debt over the term of the plan, lacks good faith.[5]

---

[5] Another confirmation standard, § 1325(a)(7), requires the debtor to show that "the action of the debtor in filing the petition was in good faith." This subsection was added to the Bankruptcy Code by BAPCPA in 2005. Although Trustee argued in the bankruptcy court that Lepe could not satisfy this requirement, he has not raised Lepe's compliance with § 1325(a)(7) as an issue on appeal. <u>See</u> Tr. Op. Br. at 1 ("The single issue on appeal is whether the Bankruptcy Court erred in finding that the Debtor's Chapter 13 plan was [proposed] in good faith pursuant to 11 U.S.C. § 1325(a)(3).") Though the Panel has held that "[t]he difference between good faith in filing a case and good faith in proposing a
(continued...)

-6-

Based upon the long-standing precedents of this circuit, we reject Trustee's construction of the Code. We also disagree with Trustee's characterization of the facts in this case.

The decisional law in the Ninth Circuit guiding a bankruptcy court's examination of a chapter 13 debtor's good faith under the Code is well-known. Goeb v. Heid (In re Goeb), 675 F.2d 1386 (9th Cir. 1982), was one of the first decisions to construe the § 1325(a)(3) good faith requirement, and its holding has continuing vitality.

Goeb noted that neither the former Bankruptcy Act, nor the then-new Bankruptcy Code, defined good faith, and that there was no controlling case law assigning meaning to the term. In light of the equitable nature of bankruptcy court proceedings, when weighing a debtor's good faith in a chapter 13 case, Goeb held that a bankruptcy court should ask whether the debtor had acted equitably in proposing the plan. Id. at 1390. More precisely, according to the court, a bankruptcy court should inquire "whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." Id. To make its decision about a debtor's good faith (or lack of it), Goeb emphasized that

[5](...continued)
plan is relatively minor, and the evidence on both issues may properly be considered together[,]" Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 918 (9th Cir. BAP 2011), we deem Trustee's objection to confirmation based on § 1325(a)(7) waived because "we consider only those issues argued specifically and distinctly in a party's opening brief." Leigh v. Salazar, ___ F.3d ___, 2012 WL 1255043 at * 4 (9th Cir. 2012) (quoting Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir.1994)).

-7-

a bankruptcy court must engage in a "case-by-case" analysis of the "particular features of each Chapter 13 Plan," and should consider "all militating factors." Id. To do justice to the purposes of the Code, the court stated:

> We emphasize that the scope of the good-faith inquiry should be quite broad. The statement most quoted on the meaning of "good faith" is: ["]Good faith itself is not defined but generally the inquiry is directed to whether or not there has been an abuse of the provisions, purpose, or spirit of Chapter XIII in the proposal or plan.["] 10 W. Collier, Bankruptcy ¶ 29.06[6] (14th ed. 1980). However, even this generalization does not adequately reflect the range of relevant considerations. . . . Too much weight should not be given to Collier's observation. . . . [B]ankruptcy courts cannot substitute a glance at [one factor such as the amount to be paid under the plan] for a review of the totality of the circumstances.

In re Goeb, 675 F.2d at 1390 n.9; see also Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1444 (9th Cir. 1986) (stating that the good faith inquiry "should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13").

Goeb is particularly instructive in resolving the issue in this appeal because, in that case, the court reversed the decision of a bankruptcy court refusing to confirm the debtors' plan solely because it would pay primarily secured and priority debt, and not "substantially repay their unsecured creditors." 675 F.3d at 1391 ("Although these two considerations are relevant, they are not determinative. Unless the [bankruptcy] court can muster other evidence of bad faith on remand, it must confirm the Goebs' plan."). After ruling that a plan provision providing a nominal repayment to unsecured creditors was "one piece of evidence that

-8-

the debtor is unfairly manipulating Chapter 13 and therefore acting in bad faith," the Ninth Circuit then cautioned:

> However, bankruptcy courts cannot substitute a glance at the amount to be paid for a review of the totality of the circumstances. Because the court below did not inquire adequately into whether the Goebs acted in good faith, we must reverse and remand.

In re Goeb, 675 F.2d at 1391.

In short, Goeb established that, in this circuit, a good faith determination in connection with chapter 13 plan confirmation cannot be based on any single factor or feature of a proposed plan, to the exclusion of review of all other relevant information. Importantly, it is of no moment that a single factor may be indicative of bad faith, or that a specific plan feature is not consistent with the "spirit of chapter 13" or may indicate manipulation of the Bankruptcy Code. Factors indicating good and bad faith may not be considered in isolation, but must always be weighed against the totality of the circumstances in each case.

Later decisions by the BAP and Ninth Circuit have consistently reaffirmed this principle. For example, in Downey Sav. & Loan Ass'n v. Metz (In re Metz), 67 B.R. 462 (9th Cir. BAP 1986), aff'd In re Metz, 820 F.2d 1495 (9th Cir. 1987), a so-called "chapter 20 case,"[6] the creditor argued that the debtor should not be allowed to use a chapter 13 plan to discharge mortgage arrearages that could not be discharged in his earlier chapter 7 case. The Ninth Circuit held that the fact that a

---

[6] In the vernacular of bankruptcy, a "chapter 20" case usually refers to a chapter 13 case that follows on the heels of a chapter 7 case filed by the same debtor, in which unsecured debt has been discharged. The debtor then utilizes a chapter 13 plan to deal with secured (or possibly nondischargeable) debts. Nelson v. Meyer (In re Nelson), 341 B.R. 671, 677 n.10 (9th Cir. BAP 2007).

chapter 13 case was filed after the debtor had sought and received a chapter 7 discharge was not per se a basis for finding that the debtor had engaged in bad faith. Indeed, after analyzing the totality of the circumstances in Metz, the court held that the debtor's plan could be confirmed. Id. at 1499.

To implement the totality of circumstances approach, the BAP has identified a variety of factors to assist a bankruptcy court in determining whether a chapter 13 debtor has proposed a plan in good faith on a case-by-case basis. A bankruptcy court might consider:

1) The amount of the proposed payments and the amount of any surplus of debtor's income after paying expenses;

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of any preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in chapter 7;

8) The existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought bankruptcy relief;

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

Fid. & Cas. Co. of N.Y v. Warren (In re Warren), 89 B.R. 87, 93

-10-

(9th Cir. BAP 1987) (citing In re Brock, 47 B.R. 167, 169 (Bankr. S.D. Cal. 1985), which in turn quoted United States v. Estus (In re Estus), 695 F.2d 311, 317 (8th Cir. 1982)).[7]

The Ninth Circuit has likewise amplified the criteria to be employed by parties and bankruptcy courts in applying the "totality of circumstances" chapter 13 good faith analysis:

> [In determining whether the debtor has acted in good faith, a] bankruptcy court should consider the following factors:
>
> (1) whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner," id. [citing In re Goeb, 675 F.2d at 1391];
>
> (2) "the debtor's history of filings and dismissals," [citing In re Nash, 765 F.2d 1410, 1415 (9th Cir. 1985)];
>
> (3) whether "the debtor only intended to defeat state court litigation," [citing In re Chinichian, 784 F.2d at 1445-46]; and
>
> (4) whether egregious behavior is present, (citing Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 937; In re Bradley, 38 B.R. 425, 432 (Bankr. C.D. Cal. 1984)).

Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999). But while a Warren/Estus and Leavitt "factors approach" may be helpful to bankruptcy courts faced with good faith issues, it must be remembered that these lists are guidelines to be understood as "the beginning and not the end of the analysis." In re Nelson, 343 B.R. at 677 n.10.[8]

---

[7] Within the Ninth Circuit, these eleven points are often referred to as the Warren factors. Outside the Ninth Circuit, they are usually referred to as the Estus factors. Here we will refer to them generally as the Warren/Estus factors.

[8] Whether a bankruptcy court employs the eleven point Warren/Estus factors (some of which are arguably dated) or the

(continued...)

-11-

In summary, then, in the Ninth Circuit, in determining whether a debtor has proposed a plan in good faith under § 1325(a)(3), a bankruptcy court must examine the totality of the circumstances. Stated another way, in evaluating good faith, a bankruptcy court must never view one factor in isolation, even if that one factor is indicative of bad faith. In re Goeb, 675 F.2d at 1391.

II.

In this appeal, Trustee argues that the bankruptcy court erred in finding that Lepe proposed his plan in good faith, because any debtor who is otherwise able to pay debts, and whose sole purpose for filing for relief under chapter 13 is to strip a totally unsecured lien on the debtor's home, while paying unsecured creditors (including the mortgage creditor holding the stripped lien) only a percentage of that debt over the term of the plan, lacks good faith.

> The courts find good faith in only those cases where the debtor is "insolvent" meaning that he "needs" bankruptcy and where there is an actual "reorganization" of the debtor's debts. The Debtor here simply does not need to reorganize anything and appears to be seeking a short cut on his second mortgage.

Trustee contends that because Lepe proposes to use a chapter 13 plan to strip a second mortgage on his home although Lepe is, using Trustee's vernacular, "solvent," requires the bankruptcy court to find that Lepe lacks good faith. In making this

_____

[8](...continued)
four-point Leavitt guidelines, some combination, or even its own matrix, it is important, as per In re Goeb, that the court not base its findings regarding the debtor's good faith (or lack of it) on a single factor, but rather, that it consider the totality of the circumstances.

argument, Trustee invites the bankruptcy court and this Panel to isolate our attention on only one of the four Leavitt criteria: whether the debtor has "unfairly manipulated the Bankruptcy Code . . . ." In re Leavitt, 171 F.3d at 1224. That approach is improper; it is patently at odds with the Ninth Circuit case law discussed above.

Trustee cites no "lien strip" cases to support his argument. Instead, Trustee relies upon decisions examining chapter 13 plans in which the debtor proposes to pay only the debtor's attorney fees and not other creditors, or plans filed in chapter 20 cases. Of course, Lepe's plan is not one designed to benefit only his attorney. And because Lepe has not previously sought chapter 7 relief, this is also not a chapter 20 case. Trustee nonetheless insists that "both of these lines of cases are instructive in determining good faith in the instant case. What is important to both lines of cases is that there is a reorganization in process and that lien avoidance is given extra scrutiny." We disagree that the cases cited by Trustee support denial of confirmation in this case.

Trustee refers to four attorney fee cases: In re Molina, 420 B.R. 825 (Bankr. D.N.M. 2009); In re Sanchez, 2009 WL 2913224 (Bankr. D.N.M. 2009); In re Montry, 393 B.R. 695 (Bankr. W.D. Miss. 2008); In re Paley, 390 B.R. 53 (Bankr. N.D.N.Y. 2008).

In In re Molina, the debtor secured a chapter 7 discharge about five years before commencing the chapter 13 case. Her chapter 13 plan proposed to pay only trustee fees and her attorney's fees. While cited by Trustee for support, the bankruptcy court actually confirmed Molina's plan after a detailed

-13-

application of the eleven Warren/Estus factors to the facts, thereby conducting a classic totality of the circumstances analysis. In re Molina, 420 B.R. at 830.

In re Sanchez involved facts similar to those in Molina, i.e., a plan proposing payment only for the debtor's attorney's fees. In re Sanchez, 2009 WL 2913224 at *1. Unlike the Molina court, though, the Sanchez court denied confirmation, in part finding that filing a plan that would pay only attorney fees was an abuse of the bankruptcy process. However, like Molina, the Sanchez court reached that conclusion after explicitly analyzing the plan and applying the eleven Warren/Estus factors. Id. at * 2. The court in In re Paley took a similar approach, and reached a similar result to Molina. In re Paley, 390 B.R. at 59-60.

In re Montry would appear to be the only decision that seemingly supports the notion that "attorney fee only" plans are per se bad faith filings justifying denial of confirmation. Unlike the other three attorney fee cases cited by Trustee, the bankruptcy court in Montry, purportedly relying on Paley, declined to perform a detailed analysis of the debtor's good faith, observing that "[a] point-by-point application of [the Warren-Estus] factors is unnecessary here because, as the court in Paley concisely stated,[a] plan whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code." In re Montry, 393 B.R. at 696. In our view, Montry misstates the holding in Paley, because the Paley bankruptcy court reached its conclusion denying confirmation only after what it described as a "case-by-case analysis of the totality of the circumstances" and applying the

-14-

eleven-point Warren/Estus factors. In re Paley, 390 B.R. at 59.

Of course, none of these four decisions addresses whether a debtor's efforts to use a chapter 13 plan to effect a lien avoidance is a factor indicating bad faith. In Paley, the plan provided that the debtor would "continue to pay her sole secured creditor directly in connection with a car loan." In re Paley, 390 B.R. at 56. And in Molina, Sanchez and Montry, no secured debts or liens were treated in the plans at all. Instead, in three of the four decisions, the bankruptcy court reached its conclusion only after conducting a detailed examination of good faith, applying a Warren/Estus multi-factor analysis.

In addition, while decided after the parties submitted their briefs, the Panel now has the benefit of a detailed examination of the good faith implications of "attorney fee plans" in Berliner v. Pappalardo (In re Puffer), 674 F.3d 78 (1st Cir. 2010). In Puffer, the court of appeals rejected an argument that such cases present an example of per se bad faith. Indeed, the First Circuit went further and observed that it would constitute reversible error for a bankruptcy court to apply a per se rule, rather than to engage in a totality of the circumstances analysis in determining good faith in chapter 13 confirmations:

> We believe that the totality of the circumstances approach to adjudicating good faith should apply equally to inquiries under section 1325. . . . The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor here to canvass the field and catalogue the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith. . . . But we, like other courts, are reluctant to read per se limitations into section 1325's good faith calculus. See Johnson v. Vanguard Holding Corp. (In re Johnson), 708 F.2d 865, 868 (2d Cir. 1983) (per curiam) (collecting cases). After all, Congress has legislated nine requirements

-15-

that must be met before a Chapter 13 plan can be confirmed, see 11 U.S.C. § 1325(a)(1)-(9), and we do not think that it is our province to insist upon a tenth.

In all events, good faith is a concept, not a construct. Importantly, it is a concept that derives from equity. . . .  This matters because equitable concepts are peculiarly insusceptible to per se rules. See Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 383 (1st Cir. 2004); see also Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 321 (1st Cir.1989) (en banc) (stating that "the hallmark of equity is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis").

In re Puffer, 674 F.3d at 82.

The Puffer majority did note that it was not blessing attorney-fee cases, and that such cases are subject to special scrutiny.[9]  Nevertheless, the court concluded that a bankruptcy court's application of a per se bad faith rule, and the failure to examine the totality of the circumstances in determining good faith, was improper.  In re Puffer, 674 at 83.

Trustee also offers four decisions arising from chapter 20 scenarios.  In re Tran, 431 B.R. 230 (Bankr. N.D. Cal. 2010), aff'd 814 F. Supp. 2d 946 (N.D. Cal. 2011); In re Okosisi, 451 B.R. 90 (Bankr. D. Nev. 2011); In re Fair, 450 B.R. 853 (E.D. Wisc. 2011); In re Hill, 440 B.R. 176 (Bankr. S.D. Cal. 2010). According to Trustee, these cases are instructive because, in each, the bankruptcy courts required the debtor to demonstrate a

---

[9] Although the Puffer majority held that it was legal error to isolate one factor in performing a good faith analysis, it instructed that, in attorney fee cases, the proponent of good faith needed to establish "special circumstances" limited to "relatively rare" instances in order to support good faith of such filings. Id. at 83.  The concurrence in Puffer would not require the application of any special rule in such cases, and instead, would simply rely upon the discretion of the bankruptcy court to determine good faith based on relevant facts. Id.  Of course, we express no opinion on whether, under the Ninth Circuit case law, the debtor's motives in proposing a plan that pays only attorneys fees warrant any "special scrutiny" by the bankruptcy court.

-16-

need for filing a chapter 13 case separate and distinct from the debtor's desire to employ lien avoidance. However, each of these decisions can be distinguished on the facts.

In Okosisi and Hill, the bankruptcy courts ruled that the debtors filed their chapter 13 petitions and proposed their plans in good faith. The debtors in each case were insolvent when they filed, and each had significant debts to reorganize. Both courts reached their good faith conclusion after applying a totality of the circumstances analysis.

The district court in Fair actually came to no conclusion regarding the debtor's good faith. It did, however, pose an observation before remanding that case to the bankruptcy court to engage in further fact-finding regarding good faith:

> Filing a chapter 13 case "solely for the purpose of the lien avoidance" suggests manipulation of the bankruptcy code and is evidence of bad faith. Hill at 184 (citing Tran [411 B.R.] at 238). The Court expresses no opinion on this issue, which should be explored by the bankruptcy court on remand. In re Sidebottom, 430 F.3d 893, 899 (7th Cir. 2005) (listing factors for good faith inquiry).[10]

In re Fair, 450 B.R. at 858. In other words, after noting that filing a chapter 13 petition to secure a lien avoidance had in other cases been viewed as "evidence of bad faith," the Fair court remanded its case to the bankruptcy court to consider that fact as only one relevant factor in the good faith inquiry.

Trustee places greatest emphasis on In re Tran. In Tran, the debtor filed a chapter 13 petition after she had received a

---

[10] The Seventh Circuit in Sidebottom listed seven factors in the good faith analysis, none of which are inconsistent with those identified in Leavitt and Warren/Estus.

-17-

discharge in a chapter 7 case. The bankruptcy court determined that Tran's sole purpose in filing the second bankruptcy case was to avoid a second mortgage on her residence, that the debtor had only a small arrearage on her first deed of trust to cure, and owed no unsecured debt. The bankruptcy court ruled that the debtor lacked good faith. However, that the debtor filed merely to avoid the lien was not the only factor considered in the bankruptcy court's good faith determination. Both the bankruptcy court, and the district court on appeal, noted that an additional factor influencing the good faith analysis was that the debtor was solvent on a balance sheet basis.

Hoping to find support in Tran, Trustee argues that Lepe was "solvent" in this case. But the "insolvency" discussed in Tran refers to a situation where "the sum of [the debtor's] debts is greater than all of such entity's property, at a fair valuation[.]" § 101(32)(A). In accounting parlance, a solvent debtor's assets would exceed liabilities. This balance sheet insolvency must be distinguished, though, from cash flow insolvency, where a debtor is unable to pay its debts when they come due. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 26 (9th Cir. BAP 2009).

Whether the debtor suffers from balance sheet insolvency may well be important to a bankruptcy court in evaluating the debtor's good faith in a chapter 20 scenario because it may indicate that the debtor has assets available with which to pay debts without resort to the bankruptcy process. However, based upon the schedules and other evidence given to the bankruptcy court here, it is clear that Lepe was not balance sheet solvent. Quite the

-18-

contrary appears to be true. While Lepe's cash-flow would arguably allow him to pay his mortgage payments with some small amount remaining each month to apply toward unsecured debts, Lepe's financial circumstances were, indisputably, dire. As noted above, indisputably, Lepe was balance sheet insolvent, in that the amount of his debts greatly exceeded the value of his assets.

Moreover, neither balance sheet insolvency, nor inability to pay debts, is a prerequisite for filing a voluntary petition under the Bankruptcy Code. Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167, 171 (9th Cir. BAP 1988); see also Taylor v. Winnecour (In re Taylor), 450 B.R. 577, 579 n.3 (Bankr. W.D. Pa. 2011) ("Of course, there is no requirement that an individual be insolvent to be a debtor in bankruptcy. See generally 11 U.S.C. § 109, 'Who may be a debtor,' wherein there is no requirement of insolvency regarding individuals."); In re Local Union 722 Int'l Bhd. of Teamsters, 414 B.R. 443, 450 (Bankr. N.D. Ill. 2009). The eligibility requirements for chapter 13 relief, in particular, make no reference to a debtor's insolvency or ability to pay his debts. § 109(e) (prescribing that, subject to stated debt limitations, a chapter 13 debtor be "an individual with regular income").

The Ninth Circuit has held that the debtor's insolvency, while relevant, is not a requirement for finding that a debtor has proposed a plan in good faith in a chapter 11 case. Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074-75 (9th Cir. 2002). In interpreting § 1129(a)(3), the chapter 11 good faith rule, the court rejected any per se approach to determining good faith, observed that "insolvency is

-19-

not a prerequisite to a finding of good faith," and noted that "[t]he fact that a debtor proposes a plan in which it avails itself of an applicable Code provision does not constitute evidence of bad faith." Id. at 1074-75 (quoting In re PPI Enters., Inc., 228 B.R. 339, 344-45 (Bankr. D. Del. 1998)).

III.

The Ninth Circuit has also held that a debtor's chapter 13 plan may strip the lien of a creditor holding a claim secured by the debtor's house where there is no value to support that lien:

> To put it more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim." Here, it is plain that PSB Lending's claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house.

Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1223 (9th Cir. 2002). Given Zimmer, in proposing to strip the second mortgage, Lepe's amended plan therefore proposes to do only that which the Bankruptcy Code allows. As a result, the plan's lien-strip provision, standing alone, cannot support a finding that Lepe lacked good faith. Drummond v. Welsh (In re Welsh), 465 B.R. 843, 854 (9th Cir. BAP 2012) ("[A] debtor's lack of good faith cannot be found based solely on the fact that the debtor is doing what the Code allows.").

Here, had Lepe filed a chapter 7 case, because the creditor's second mortgage was valueless, it is likely that neither the mortgage creditor, nor any other unsecured creditors, would have been paid at all. By contrast, under Lepe's proposed

-20-

amended plan, both the second mortgage creditor and other unsecured creditors will receive a substantial partial distribution on their claims. As compared to Lepe's option to seek chapter 7 relief, and as the bankruptcy court found, his proposed plan benefitted unsecured creditors significantly.

The bankruptcy court did not clearly err in determining that Lepe filed his chapter 13 petition and proposed his plan in good faith. The court properly recognized at the beginning of the confirmation hearing that "the debtor has the burden of proof to show that the debtor is proceeding in good faith." See United States v. Arnold & Baker Farms (In re Arnold & Baker Farms), 177 B.R. 648, 654 (9th Cir. BAP 1994) (burden of proof for confirmation issues is preponderance of the evidence).

Turning to the evidence, the bankruptcy court noted the numerous errors in the debtor's petition and pleadings, but it found that these errors were attributable to the inadvertence of Lepe's counsel. In making this finding, the court thus addressed both the first and second Leavitt criteria. The third Leavitt factor, whether the debtor was utilizing the plan to defeat state court litigation, is inapplicable in this case since no state court litigation was pending here. And there was no need for the bankruptcy court to address the fourth factor (i.e., whether egregious behavior is present) because Trustee has conceded that he was "not arguing . . . that the Debtor was 'bad' in any way."

Trustee's sole basis for arguing that the bankruptcy court's good faith finding was clearly erroneous is his contention that Lepe is manipulating the Bankruptcy Code by proposing a plan to strip an unsecured lien on his house while he was, in Trustee's

-21-

imprecise terms, solvent. However, when this argument was briefed by Trustee and presented to the bankruptcy court, the court declined to endorse it. Instead, after considering the totality of his circumstances, the bankruptcy court found that Lepe had filed his plan in good faith. In particular, the bankruptcy court found that the amount paid to unsecured creditors over the term of Lepe's plan was "not insignificant," a finding Trustee has not challenged, and which appears to us to be clearly correct. The bankruptcy court also observed that the secured creditors, including the creditor holding the lien to be stripped, had not opposed confirmation. After considering all relevant circumstances, the bankruptcy court concluded that Lepe had established that his petition and plan were filed and proposed in good faith: "I'm persuaded that [Lepe's plan is] confirmable."

The bankruptcy court's finding concerning Lepe's good faith resolved a disputed question of fact. While the bankruptcy court acknowledged that confirmation in this case was "a very close call," and while another judge might have arrived at a contrary conclusion, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400-401 (1990). Simply put, the bankruptcy court's finding that Lepe proposed his amended plan in good faith was not clearly erroneous.

**CONCLUSION**

The bankruptcy court did not clearly err in finding that Lepe acted in good faith in proposing his amended plan. The bankruptcy court's decision to confirm that plan was not an abuse of

-22-

discretion.  We AFFIRM.