FILED

NOT FOR PUBLICATION

NOV 7 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br><br>BOBBY DEAN HARDCASTLE and<br>MICHELLE LYNN HARDCASTLE,<br><br>                 Debtors.<br>_____<br><br>BOBBY DEAN HARDCASTLE;<br>MICHELLE LYNN HARDCASTLE<br><br>                 Appellants,<br><br>v.<br><br>RUSSELL D. GREER, chapter 13<br>trustee,[2]<br><br>                 Appellee.<br>_____ | BAP No. EC-13-1072-PaJuKi<br>           EC-13-1249-PaJuKi<br>          (related appeals)<br><br>Bk. No. 12-34187-RB<br><br><br><br><br>**M E M O R A N D U M**[1] |

Argued and Submitted on October 18, 2013
at Sacramento, California

Filed - November 7, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

Appearances:    Mark J. Hannon argued for appellants Bobby Dean
                    Hardcastle and Michelle Lynn Hardcastle.

Before: PAPPAS, JURY and KIRSCHER, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Appellee Greer did not appear or file a brief in this appeal.

Appellants Bobby Dean Hardcastle and Michelle Lynn Hardcastle (the "Hardcastles") appeal the orders of the bankruptcy court denying confirmation of their chapter 13[3] plan (Appeal No. EC-13-1249) and dismissing the bankruptcy case (Appeal No. EC-13-1072).  We AFFIRM both orders.

**FACTS**

The Hardcastles filed a bankruptcy petition under chapter 13 on August 1, 2012.  At the time, there were two mortgages on their residence.  Their Schedule D listed a debt they owed to Bank of America for a loan secured by the second mortgage with a balance of $85,741.00 (the "Second Mortgage").  Their original chapter 13 plan submitted with their petition proposed that they pay the chapter 13 trustee $1,540 per month for sixty months, which would result in a dividend to unsecured creditors of 50.25 percent.  That dividend was calculated including the full amount due on the Second Mortgage as an unsecured claim.

On August 8, 2012, the Hardcastles filed a motion asking the bankruptcy court to value the Second Mortgage at "$0.0", arguing that, based on the value of their Residence, and the amounts owed on the first mortgage, the Second Mortgage was fully unsecured.

On September 21, 2012, chapter 13 trustee Russell D. Greer ("Trustee") objected to confirmation of the Hardcastles' plan because it did not propose that they pay all of their disposable

---

[3]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

income into the plan.

At some point after filing the petition and original plan, the Hardcastles entered into a modification agreement with the holder of the first mortgage, reducing the amount of that mortgage payment by $652.78 per month. As a consequence, the Hardcastles filed an amended plan (the "First Amended Plan") providing for payment of $2,192.00 per month for sixty months, with a corresponding increase in the dividend to unsecured creditors to 71 percent. The First Amended Plan dividend also assumed that the full balance due on the Second Mortgage would be unsecured in calculating the expected dividend to unsecured creditors.

On September 24, 2012, a hearing was held on the Hardcastles' motion to value the Second Mortgage. The bankruptcy court granted the motion and entered an order on October 1, 2012 (the "Valuation Order"). The Valuation Order provided that,

> This motion is granted as provided in this order. The secured claim of Bank of America, whose claim is secured by a junior deed of trust on debtors' residence, is set at $0.00. The claim shall be treated as an unsecured claim in any Chapter 13 plan. No further relief will be afforded.

(Emphasis added.)

On November 16, 2012, Bank of America filed a secured proof of claim in the bankruptcy case in the amount of $88,970.00 for the Second Mortgage debt.

The bankruptcy court denied confirmation of the First Amended Plan on November 27, 2012, because creditors had not received proper notice. The Hardcastles filed a Second Amended Plan the same day. The Second Amended Plan provided for payments

-3-

of $1,540.00 per month for sixty months and projected a 100 percent dividend to unsecured creditors. For the first time, the calculation of that dividend did not include any amounts owed on the Second Mortgage. Trustee objected to confirmation of the Second Amended Plan because, among other reasons, it did not provide for payment of the now-unsecured claim arising from the Second Mortgage.

The bankruptcy court denied confirmation of the Second Amended Plan on January 22, 2013. The bankruptcy court expressed concern about whether the Hardcastles had submitted the Second Amended Plan in good faith. The court noted that, in connection with proposing that plan, they had increased the reported income of Mrs. Hardcastle by $646.00. They then increased their proposed expenses for food, clothing, laundry, dry cleaning, medical and dental, recreation, auto repairs and maintenance, and added new categories of expenses for savings and a college fund. Indeed, as the court observed, the net increase in expenses over the original and First Amended Plan was $1,298 per month.

But of greatest concern to the bankruptcy court was the Second Amended Plan's elimination of any payments on the Second Mortgage debt, which in turn allowed them to effectively "increase" the dividend to other unsecured creditors to 100 percent. The court denied confirmation of the Second Amended Plan, citing a lack of good faith, on January 22, 2013.

The Hardcastles immediately filed a motion for reconsideration concerning the bankruptcy court's denial of confirmation. They argued that they were not obligated to include the Second Mortgage unsecured debt in their Second

-4-

Amended Plan because Bank of America had failed to timely file a claim for the unsecured debt. Trustee objected to reconsideration, reminding that the court's order valuing the Second Mortgage stated, "the claim shall be treated as an unsecured claim in any Chapter 13 plan." The bankruptcy court denied reconsideration on February 12, 2013, making two points:

> First, the court's order granting the debtors' motion to value Bank of America's collateral provides: "The secured claim of Bank of America, whose claim is secured by a junior deed of trust on the debtors' residence is set at $0.00. The claim shall be treated as an unsecured claim in any Chapter 13 plan." Second, the court's standard form plan, and thus the debtors' proposed [Second Amended Plan] at para. 2.15 provides that Class 7 general unsecured claims include the under-collateralized portion of secured claims not entitled to priority.

The Hardcastles filed a timely appeal of the order denying confirmation on February 14, 2013.

When no further amended plan was filed by the Hardcastles, on March 7, 2013, Trustee filed a motion to dismiss their chapter 13 case for "unreasonable delay by the debtor(s) that is prejudicial to creditors." The Hardcastles responded to the dismissal motion order on March 11, 2013, again asserting that Bank of America, the formerly secured creditor, must file an unsecured claim in order to be paid under the chapter 13 plan.

The bankruptcy court conducted a hearing on Trustee's motion on April 23, 2013. The bankruptcy court granted the motion, it's dismissal order, entered on April 25, 2013, reciting that "findings of fact and conclusions of law having been stated orally on the record and good cause appearing, IT IS ORDERED that the motion is granted and the case is dismissed." The excerpts do not include a transcript of that hearing in the record, nor

-5-

does it appear in the docket of the bankruptcy case.

The Hardcastles filed a timely appeal of the dismissal order on April 27, 2013.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (L). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in denying confirmation of Hardcastles' Second Amended chapter 13 plan.

Whether the bankruptcy court abused its discretion in dismissing the Hardcastles' chapter 13 case.

## STANDARDS OF REVIEW

Whether a chapter 13 plan should be confirmed involves mixed questions of fact and law, where factual determinations are reviewed under the clearly erroneous standard, and determinations of law are reviewed de novo. Meyer v. Lepe (In re Lepe), 470 B.R. 851, 855 (9th Cir. BAP 2012). Whether a chapter 13 plan has been filed in good faith or lack of good faith is a question of fact reviewed for clear error. Id.

We review the bankruptcy court's dismissal of a chapter 13 case for abuse of discretion. Ellsworth v. Lifescape Med. Assocs. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United

-6-

States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

### I.
### The bankruptcy court did not err in denying confirmation of the Hardcastles' Second Amended Plan.

   A.   **The Hardcastles' Second Amended Plan was not submitted in good faith.**

To be confirmed, a debtor must prove that its chapter 13 plan is proposed in good faith and not by any means forbidden by law. § 1325(a)(3). The debtor, as the chapter 13 proponent, has the burden of proof in establishing good faith (as well as all other elements of plan confirmation in § 1325). In re Hill, 268 B.R. 548, 552 (9th Cir. BAP 2001). The Panel recently examined application of the good faith standard in cases involving denial of confirmation of chapter 13 plans:

> One of the requirements for confirmation of a chapter 13 plan is that it be proposed in good faith. § 1325(a)(3). "Good faith" is not defined in the Bankruptcy Code. The Ninth Circuit has held that "the proper inquiry is whether the [debtors] acted equitably in proposing their Chapter 13 plan." Goeb v. Heid (In re Goeb), 675 F.2d 1386, 1390 (9th Cir. 1982). In making that inquiry, the court applies a "totality of the circumstances" test, taking into consideration (1) whether the debtor misrepresented facts, unfairly manipulated the Bankruptcy Code or otherwise proposed the plan in an inequitable manner; (2) the history of the debtor's filings and dismissals; (3) whether the debtor intended only to defeat state court litigation; and (4) whether the debtor's behavior was egregious. Leavitt, 171 F.3d at 1224 (applying same factors for good faith filing of chapter 13 petition).

Drummond v. Welsh (In re Welsh), 465 B.R. 841, 843 (9th Cir. BAP 2012), aff'd 713 F.3d 1120, 1129 (9th Cir. 2013).

Criteria two and three in Welsh do not appear to apply in this case. Nor did the bankruptcy court characterize the

-7-

Hardcastles' behavior as egregious. However, in denying confirmation of the Second Amended Plan, the bankruptcy court found that the Hardcastles had unfairly manipulated the Bankruptcy Code and acted in an inequitable manner toward their creditors. In its order, the bankruptcy court expressed concern for the manipulative posture taken by the Hardcastles in proposing the Second Amended Plan:

> In the present case, it is clear the debtors made these dramatic increases to their living expenses, together with reduction of their estimated total of unsecured claims [by ignoring the Second Mortgage unsecured debt], for the sole purpose of retaining for themselves, at the expense of their creditors, all of their previously-unreported income. In these circumstances, the court is unable to conclude that the plan has been proposed in good faith.

As a result of the modification, the Hardcastles' first mortgage payment was significantly reduced. Rather than use the additional monthly income to pay plan payments, they instead increased their living expense budget items, indeed, creating two new expenses. They presumably sought to justify this approach by suggesting that their new plan would, despite their increase in living costs, pay their unsecured creditors in full. However, to do so, the Hardcastles' plan sought to ignore their obligation on the Second Mortgage debt, which the bankruptcy court had declared to be unsecured. All things considered, we cannot conclude that the bankruptcy court's finding that the Hardcastles' lacked good faith in submitting the Second Amended Plan was clearly erroneous based on this record.

The bankruptcy court was also concerned that, in proposing the Second Amended Plan, the Hardcastles disregarded the Valuation Order concerning treatment of the Second Mortgage

claim. While the Hardcastles prefer to focus our analysis on later events, a proper review of this issue begins with the propriety of the Valuation Order itself.

The Valuation Order was entered on motion of the Hardcastles and granted the precise relief they requested: that Bank of America's collateral be valued at zero, thereby rendering its claim fully unsecured. After giving them that relief, in its order granting the Hardcastles' motion, the bankruptcy court added that "[t]he claim shall be treated as an unsecured claim in any Chapter 13 plan." In this regard, we note the bankruptcy court's choice of words – "shall be treated". The Hardcastles were given no option by the bankruptcy but to thereafter treat the Second Mortgage claim as an unsecured claim because it was the lawful order of the court. <u>Devers v. Bank of Sheridan (In re Devers)</u>, 759 F.2d 751, 755 (9th Cir. 1985) (explaining that, by seeking protection of the bankruptcy court, debtors assume "a duty to participate in that proceeding by obeying the court's lawful orders.").

The bankruptcy court's order directing that the claim "shall be treated" as an unsecured claim in subsequent chapter 13 plans was grounded in the unambiguous language of § 506(a)(1):

> <u>An allowed claim of a creditor</u> secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and <u>is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim</u>.

(Emphasis added.) Interpreting § 506(a)(1), the Supreme Court

has ruled that, via this statute, a secured claim is bifurcated into "secured and unsecured portions, with the secured portion limited to the value of the collateral." Assocs. Commer. Corp. v. Rash, 520 U.S. 953, 961 (1997). See also Enewally v. Wash. Mut. Bank (In re Enewally), 368 F.3d 1165, 1168-69 (9th Cir. 2004) ("Under the Bankruptcy Code, a secured loan may be separated into two distinct claims: a secured claim for an amount equal to the value of the security, and an unsecured claim for the difference, if any, between the amount of the loan and the value of the security."). According to the statute and case law, then, the bankruptcy court's action in granting the Hardcastles' motion under § 506(a)(1) effectively rendered the creditor's claim formerly secured by the Second Mortgage an unsecured claim. Consistent with the statute, the court directed that the claim "shall be treated as an unsecured claim in any Chapter 13 plan."

The Hardcastles did not appeal the bankruptcy court's directive in the Valuation Order, and they do not challenge the authority or legitimacy of the bankruptcy court's Valuation Order in this appeal. They are thus bound by the terms of that order and were obliged to include the Second Mortgage as an unsecured claim in their Second Amended plan. Instead, the Hardcastles note that Bank of America filed a secured proof of claim on November 26, 2012, about two months after the bankruptcy court entered its Valuation Order deeming the creditor's claim fully unsecured. The Hardcastles insist that, in filing a secured claim, the creditor elected to forego any unsecured claim in the bankruptcy court.

-10-

Unlike the Hardcastles, we do not know, and decline to speculate about, why Bank of America filed a secured proof of claim even after entry of the Valuation Order.[4] While the Hardcastles argue to the contrary, we genuinely doubt this act was the result of Bank of America's knowing election to file a fully secured proof of claim notwithstanding that its claim had been deemed unsecured in the Valuation Order.

In addition, the Hardcastles have cited no authority to support their argument that a creditor's submission of a secured proof of claim after the claim has been valued by the bankruptcy court as fully unsecured disqualifies that creditor from thereafter participating in any plan payments to unsecured creditors. Instead, the Hardcastles rely upon cases in which there had been no valuation of the creditor's claim under § 506(a).

The principal case is In re Harrison, 987 F.2d 677, 681 (10th Cir. 1993). In that case, a creditor had filed a secured claim, which the debtor's plan proposed to treat as being satisfied in full by surrender of the collateral securing that claim to the creditor. The creditor appealed the order of the

---

[4] A "Request for Special Notice" was filed by Pite Duncan, LLP, as attorneys for Bank of America, as the successor-in-interest to the creditor that made the loan to the Hardcastles secured by the first mortgage, on August 17, 2012. A "Notice of Appearance" for Bank of America was filed by attorneys Prober & Raphael on August 21, 2012. There is nothing in the record to show that either of these law firms were given notice of the Hardcastles' motion to value the creditor's collateral. Pite Duncan filed the proof of claim for the first mortgage. Claim No. 6. Prober & Raphael filed the secured proof of claim for the Second Mortgage. Claim No. 7.

-11-

bankruptcy court approving the plan arguing that its claim was partly unsecured as a result of the surrender. The Tenth Circuit held that because the creditor had filed a proof of claim asserting fully secured status, the claim was properly treated as such in the plan. The court noted that, to the extent that the creditor contended its claim was partly unsecured, it had a duty to amend its proof of claim, or to file a motion to value the claim under § 506(a) as partially unsecured. In short, the court in In re Harrison required the secured creditor to file an amended proof of claim when its claim was partially unsecured and when there had been no valuation of the collateral under § 506(a).

In In re Padgett, 119 B.R. 793, 794 (Bankr. D. Colo. 1990), a creditor filed a proof of claim asserting secured status in a chapter 7 case. After the court approved the trustee's proposed distributions to unsecured creditors, the erstwhile secured creditor filed a reconsideration motion, contending his collateral was worthless, and that his claim should be paid as an unsecured claim. The creditor argued that, "pursuant to 11 U.S.C. § 506(a), its claim is, by operation of law, an unsecured claim to the extent that it exceeds the value of the collateral." Id. at 794. The Padgett court, however, held:

> A creditor with an undersecured or unsecured claim, or a creditor with a secured claim that devolves into an undersecured or unsecured claim, must timely file an amended, or supplemental proof of claim or otherwise provide legally sufficient notice of same to the trustee in order to be treated as an unsecured creditor of the estate and receive a pro rata distribution of estate proceeds.

Id. at 795. Again, like In re Harrison, there was no court

ordered valuation of collateral under § 506(a). Put another way, Padgett stands for the rule that a secured creditor must file an unsecured claim in the absence of a § 506(a) valuation of its claim by the bankruptcy court.

Finally, the Hardcastles cite this Panel's unpublished decision in Olympic Coast Inv., Inc. v. Crum (In re Wright), 2008 WL 8462954 (9th Cir. BAP Oct. 16, 2008). This was another chapter 7 case in which a creditor filed a secured proof of claim for $4,573,239; the trustee later filed a motion to abandon the creditor's collateral on the grounds that the debtor had estimated its value at $50,000. The creditor objected to the trustee's proposed distribution to creditors on the grounds that trustee had "admitted" that the collateral was only worth $50,000, so it had an unsecured claim for $4,523,239. The Panel dismissed the appeal as moot. However, it commented that, if it were to reach the merits, it would agree with the Padgett and Harrison courts that "any undersecured creditor should file a claim for the unsecured portion of its claim (or a valuation motion) in order to participate in any distribution to unsecured creditors." Id. at * 6.

In short, none of the authorities cited by the Hardcastles stand for the proposition that a secured creditor must file a proof of claim as an unsecured creditor where the bankruptcy court has valued that claim as unsecured in an order entered under § 506(a). We know of no case law that requires the filing of an unsecured proof of claim after the court determines that claim as unsecured and directs it to be treated as an unsecured claim in any Chapter 13 plan.

-13-

In summary, the Hardcastles manipulated the bankruptcy system when, in proposing the Second Amended Plan, they dramatically increased their living expenses, while at the same time inappropriately reducing payments to unsecured creditors. In doing so, they ignored a lawful order of the bankruptcy court directing that they treat Bank of America's claim as an unsecured claim in the plan. The bankruptcy court did not clearly err in its factual determination that the Hardcastles had not proposed the Second Amended Plan in good faith, nor in its decision to deny confirmation of the plan.

**B.    The Second Amended Plan required that the Second Mortgage be treated as an unsecured claim.**

In its order denying reconsideration of the order denying plan confirmation, the bankruptcy court cited an alternative reason to deny confirmation:  that the Hardcastles' proposed Second Amended Plan, paragraph 2.[1]5, provides that the class of general unsecured creditors includes "the under-collateralized portion of secured claims not entitled to priority."

Paragraph 2.15 is derived from the district's standard form chapter 13 plan, EDC-Form 3-080.  The text of paragraph 2.15 of the Second Amended Plan reads as follows, with the Hardcastles' addition to the form underlined:

> Class 7 [unsecured claims] consists of all other unsecured claims not listed as class 5 or 6 claims. These claims will receive no less than a 100.0 % dividend.  These claims, including the undercollateralized portion of secured claims not entitled to priority, total approximately $71,438.00.

The Eastern District of California has by local rule adopted a "mandatory" form chapter 13 plan, Form EDC 3-080, which is to

-14-

be used by all chapter 13 debtors. Bankr. E.D. Cal. Local R. 3015-1(a). The practice of prescribing form plans for use in a district is widespread. Indeed, over 70 percent of the bankruptcy courts in the United States have adopted mandatory chapter 13 plans for use in their districts. In re Visintainer, 435 B.R. 727, 729-30 (Bankr. M.D. Fla. 2010). The provision of the Hardcastles' Second Amended Plan is based on the district's form. To the extent that the bankruptcy court in this case interpreted this provision to mean that the class of unsecured claims "includes the under-collateralized portion of secured claims not entitled to priority," and that the Hardcastles' failure to include the Second Mortgage debt as an unsecured claim in their Second Amended Plan would violate the intent of the local rule and form, we defer to the court's interpretation of its local form. Moncur v. Agricredit Acceptance Co. (In re Moncur), 328 B.R. 183, 191 (9th Cir. BAP 2005).

Moreover, we note that the Second Amended Plan also provides at paragraph 2.04 that,

> [A] proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim unless the court's disposition of a claim objection, valuation motion, or lien avoidance motion affects the amount or classification of the claim.

(Emphasis added.) In other words, as we read it, the Hardcastles' own Second Amended Plan effectively provides that the Valuation Order, and not Bank of America's proof of claim, would control the classification of the creditor's claim.

**II.**
**The bankruptcy court did not abuse its discretion in dismissing the Hardcastles' chapter 13 case.**

The Hardcastles' brief in the appeal from the dismissal of

-15-

their case is substantially the same as their brief concerning denial of confirmation. They argue that the bankruptcy court erred in denying the confirmation of their Second Amended Plan, and it was therefore a corresponding error for the bankruptcy court to dismiss the case.

The hearing on Trustee's dismissal motion occurred after two continuances. The only document relevant to this event appearing in the appellate record, or in the bankruptcy court's docket of the case, is the order which recites that the bankruptcy case was dismissed because the Hardcastles had engaged in unreasonable delay that was prejudicial to creditors. Such is one of the causes set forth in the Code which may justify dismissal. See § 1307(c)(1) (providing that a bankruptcy court may dismiss a chapter 13 case "for cause, including – (1) unreasonable delay by the debtor that is prejudicial to creditors . . . ."); Nelson v. Meyer (In re Nelson), 343 B.R. 671, 676 (9th Cir. BAP 2006) ("A debtor who declines to revise a plan after denial of confirmation becomes vulnerable to § 1307(c)(1) 'cause' for unreasonable delay by the debtor that is prejudicial to creditors.").

The dismissal order states that "findings of fact and conclusions of law having been stated orally on the record and good cause appearing, IT IS ORDERED that the motion is granted and the case is dismissed." We have been provided with no transcript of that hearing to detail those findings and conclusions. In addition, the Hardcastles' brief offers no insight beyond the order as to the bankruptcy court's findings, conclusions or reasoning in support of its decision, simply arguing that the bankruptcy court was wrong to have denied

-16-

confirmation and thus was wrong to dismiss the case.

This approach on appeal is regrettable; we simply have no way to review the bankruptcy court's decision nor to examine the court's reasoning. The Ninth Circuit has instructed that, where a transcript of the hearing at which the bankruptcy court made findings and conclusions is unavailable, we should employ our best efforts to determine the court's reasons from all sources. Ehrenberg v. Cal. State Fullerton (In re Beachport Enters., Inc.), 396 F.3d 1083, 1086-88 (9th Cir 2005). Where we cannot determine the bankruptcy court's reasoning from all available sources, we may summarily affirm the bankruptcy court. Id. The Hardcastles, as appellants, bear the burden of providing an adequate record to evaluate their arguments and must equally bear the consequences of failing to provide that record. Cashco Fin. Sec. Servs., Inc. v. McGee (In re McGee), 359 B.R. 764, 765 (9th Cir. BAP 2006).

We know that the bankruptcy court denied confirmation of the Hardcastles' Second Amended Plan. We are unaware of whether the Hardcastles filed a further plan to conform to the bankruptcy court's ruling. And, above, we cite the case law holding that, if they did not file such a plan, it may constitute unreasonable delay justifying dismissal. At bottom, the Hardcastles have not provided an adequate record to allow us to review the bankruptcy court's dismissal order. We therefore decline to disturb that order and summarily affirm it. Where there is a clearly inadequate record on appeal, we have "little choice" but to affirm. Morrissey v. Stuteville (In re Morrissey), 349 F.3d 1187, 1191 (9th Cir. 2003); In re Friedman, 126 B.R. 63, 68 (9th

Cir. BAP. 1991).

**CONCLUSION**

The orders of the bankruptcy court are AFFIRMED.